No. 16,037.

BLANCHARD, DOING BUSINESS AS CLYDE W. BLANCHARD JEWELRY CO. *v.* GRISWOLD ET AL.
(214 P. [2d] 362)

Decided November 21, 1949. Rehearing denied January 30, 1950.

30

 

Mr. PHILIP HORNBEIN, Mr. HARRY L. SILVERMAN, for plaintiff in error.

Messrs. IRELAND & IRELAND, Mr. FRANK McDONOUGH, JR., for defendants in error.

Mr. WILBUR F. DENIOUS, Mr. ALBERT S. BARD, amici curiae.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

EACH of the sixteen identical causes of action in the complaint here involved was brought on behalf of a separate college sorority. In each it was alleged in substance that the sorority was a fraternal secret order, not incorporated; that it had adopted and long used an official badge and other insignia, distinctive in design, nature and quality; that no person not a member might lawfully purchase, wear, use, manufacture, sell, or display for sale any badge, emblem, or insignia of said society, except as provided by the rules, regulations and laws of said organization; that the defendant Blanchard had manufactured, sold and displayed for sale counterfeits and imitations of the official badge, emblem and

insignia of said society without authority thereof and contrary to the statute, and was continuing so to do to the great and irreparable damage of the society; that the society had been damaged in the sum of $100 thereby; that defendant threatened to continue such unauthorized and unlawful acts, and that if continued, the society would be further irreparably injured. Prayer was for $100 damages in favor of each plaintiff and for injunctive relief.

By answer, the defendant in substance admitted his manufacture and sale of the sorority's badges and insignia; asserted his right so to do; denied that his badges are counterfeits or imitations, and denied all allegations of damage; alleged that plaintiffs' badges and other insignia were not protected by patent, copyright or trade-mark; that they had been manufactured, sold and offered for sale by manufacturers and tradesmen throughout the United States for many years, and that defendant for many years had manufactured and sold such badges and insignia for the exclusive use of members of the sororities.

Upon trial of the cause, judgment was entered in favor of plaintiffs, which was here reviewed in *Blanchard v. Griswold,* 113 Colo. 567, 160 P. (2d) 718, wherein we held in substance that in the absence of any evidence in the record of rules or regulations of the sororities prohibiting or restricting the manufacture or sale of the badges and insignia of the sororities, the essential allegations of the complaint were without support and the judgment must be reversed. We therein said: "There is nothing in the record and nothing brought to our attention, and certainly nothing in, the statute, which precludes one legally entitled to the badges or insignia of any of the sororities or any of the chapters thereof from ordering and purchasing their badges and other insignia from any manufacturer who desires to make them."

The case upon being remanded was again tried by

the district court and evidence was there submitted of the rules and regulations of the sororities controlling the manufacture and sale of their badges and other insignia. It was admitted that defendant was not the official jeweler by appointment of any of the sororities here represented, and evidence was introduced, without contradiction, that defendant's sales of badges had been only to members or chapters of the sororities entitled to their use and that the badges manufactured and sold by him were exactly like the badges made by the "official" manufacturers in design, form and metallic content. Upon this evidence the trial court concluded that the acts of defendant have been in violation of the laws and rules of the sororities plaintiff and against equity and good conscience, and that they were in contravention of the provisions of chapter 147, '35 C.S.A. Accordingly, judgment was rendered against the defendant in the sum of $1.00 in favor of each plaintiff sorority, and defendant was enjoined from the manufacture, display or sale of the badges, emblems or insignia of the sororities represented, unless or until authorized by them. Defendant challenges the judgment as being erroneous, whether based on the ground that his acts were against equity and good conscience as in violation of the regulations of the sororities, or on the ground that they were in contravention of the statute.

The evidence discloses that the several sororities represented herein have different regulations in regard to the manufacture of their badges and other insignia, and that a few of them hold design patents thereon or have copyrighted the designs or registered them under the trade mark laws, but the causes of action as to all the sororities are identical in form, and both in the complaint and in the briefs the several sororities are considered as belonging in the same class; therefore, the only rights to be here adjudged are the rights common to them all.

Considering the rules of the sororities as submitted, we

note in the case of Delta Delta Delta Sorority that the only regulation relative to the manufacture or sale of badges or other insignia is the following: "Chapters and individual members are urged to make all jewelry and favor purchases from the official jeweler only, and to report to the executive office any cases where the quotation of the official jeweler is in excess of the competitors or where service rendered by the official jeweler is unsatisfactory." Instead of prohibiting the manufacture or sale of its badges by others than the official jeweler, this provision "urges" purchase from him only, and the further "urge" to report "any cases where the quotation of the official jeweler is in excess of the competitor's" plainly contemplates the manufacture and sale of badges by others than the official jeweler and is an implied authority therefor.

In the case of Kappa Delta, the constitution provides only "There shall be an official jeweler of Kappa Delta Sorority to be selected by the National Council at each National Convention." No prohibition of the manufacture or sale of sorority badges or other insignia by others than the official jeweler can be inferred from such provision.

In the case of Alpha Phi no regulations or restrictions whatever are disclosed as to the manufacture, purchase or sale of badges other than the specification in their constitution, that in addition to the official unjeweled badge, "members may purchase a badge, made from the official die, jeweled with white stones, etc." It further appears that by virtue of a contract with the sorority, L. G. Balfour Company is the official jeweler, and in the sorority's "Manual of Information" are instructions that in case of re-orders, members should "make out the slip that Balfour furnishes for ordering pins" and "send the one marked 'send to the official jeweler' to Balfour." In the case of Zeta Tau Alpha, the by-laws state that the die of the official badge is filed with the official jeweler, and the sorority appears to have designated the L. G.

Balfour Company by contract to be its official jeweler and the sole manufacturer of its official coat of arms. As to these two sororities, the fact of existing contract with one manufacturer, appointing him the official jeweler of the sorority, or of instructions to members on how to order a badge, would establish no inference of intended prohibition against the manufacture or sale of badges by others than the official jeweler.

In the constitution and code of Delta Zeta appears only the provision, "All such official jewelry will be ordered only from the official jeweler." Even where, as here, the members are by sorority regulation prohibited from purchasing elsewhere than from the official jeweler, there appears to be no basis therein for action as here brought. If I instruct my children to buy their bubble gum from Smith, and contract with him therefor, yet they persist in buying from Jones, my remedy is not by way of injunction against the latter; it lies nearer home.

■ ■ Further, assuming that the facts otherwise may so justify, the intervention of equity may properly be invoked only where substantial injury appears. It is true that there may be irreparable injury which is not pecuniary and that a sorority is entitled to an injunction against the use of emblems by those not entitled thereto which are likely to deceive or create confusion, even in the absence of specific statutory prohibitions. *Grand Lodge v. Grand Lodge*, 85 Colo. 17, 273 Pac. 648; *Faisan v. Adair*, 144 Ga. 797, 87 S.E. 1080. However, in the case before us, the badges are shown to have been sold only to members or chapters of the sororities properly entitled thereto, with no deceit or confusion so far as the sorority was concerned, and the badges are shown to have been of identical materials and design as those manufactured by the official jeweler, with no deceit or confusion insofar as the members were concerned. The bosom of the college swain and maiden can swell just as proudly beneath a badge manufactured by Blanchard

as by Balfour, and the Greek of the motto be equally mysterious and unknown. We find no basis for the judgment herein in any disclosed violation of the laws or regulations of the sororities.

With regard to the contention that defendant's acts are in contravention of the provisions of sections 3 to 12 inclusive, of chapter 147, '35 C.S.A. (chapter 150, S.L. 1907), the question of whether such a construction would be in violation of constitutional rights is not mooted. In considering the import of the statute involved, we note first the title of the act, which in this jurisdiction is at once a guide to legislative purpose, a limitation upon the scope of valid enactment and the index of legislative intent. *People v. Friederich*, 67 Colo. 69, 185 Pac. 657. The title reads as follows: "An Act to confer exclusive rights to the use of badges, insignia, and emblems for benevolent and secret societies and orders, and to provide a remedy for the violation of such right, and a penalty for the unlawful use of such badges, emblems and insignia." The purpose there declared is to confer exclusive rights to the *use* of badges, together with remedy for violation, and penalty for unlawful *use*. It is contended by plaintiffs that the word "use" may have a very broad meaning, even to include "manufacture," "display" and "sale," but such is not the ordinary import of the word, and, in construing a statute, words should be given their commonly accepted meaning unless clear showing of contrary intent appears. *McNichols v. Denver*, 120 Colo. 380, 209 P. (2d) 910; *Myers v. Denver & R. G. R.R., etc. Co.*, 61 Colo. 302, 157 Pac. 196. We find no such contrary intent in the statute, where the word is patently employed with its common meaning in association and as coordinate with "counterfeit," "sale" and "wear," rather than as inclusive of the several meanings of those words. We must conclude that the title of the act does not express a purpose sufficiently broad to include the prohibition or restriction

of the manufacture of badges except upon authority of the societies entitled to their use.

■ Further, the provisions of the act do not prohibit the unauthorized manufacture of badges for purchase and use by those entitled thereto. It is only the use and wearing of emblems that is restricted to members, and it is only conterfeits and imitations which may not be made or sold. It is contended that defendant's badges are copies, counterfeits or imitations, but the statute does not prohibit the making of copies, and, to constitute counterfeits or imitations, there must be exclusive and identifiable originals, at the least, to be counterfeited or imitated. Under the evidence here disclosed, a badge of prescribed design and content made by one jeweler is no more a counterfeit or imitation than if made by another. Explicit authority from a society to manufacture its badge, whether of a college sorority or of a general fraternal order, is not the test whereby to determine that a badge is genuine rather than counterfeit, under such a statute.

■ An ambiguous statute should be interpreted so as not to produce absurd results. Section 4 of chapter 147 supra, provides: "Whoever counterfeits or imitates any such badge, rosette, emblem or insignia * * * or uses or wears any counterfeit or imitation of any such badge, rosette, emblem or insignia, shall be guilty of a misdemeanor and be punished by fine of not more than three hundred (300) dollars or by imprisonment in the county jail for not more than three months, or by both such fine and imprisonment." Under this statute, as interpreted by plaintiffs, every member of a sorority wearing a badge made by anyone other than the official jeweler would be guilty of a misdemeanor and subject to fine and imprisonment as provided therein. Likewise, would not a member of any fraternal order wearing an emblem of his lodge, manufactured by one not authorized by the supreme body, be guilty thereunder and sub-

ject to the same penalties? Such cannot have been the legislative intent.

The obvious purpose of the act is not to protect a privileged manufacturer in a monoply, but to protect societies and the public from fraud and imposition, whether through the use or wearing of fraternal badges by those not entitled thereto, or by the use of other badges not of identical design but so contrived as likely to be mistaken therefor, whereby there may result deception or confusion on the part of members or the public. The act is closely related to statutes against false pretense and false personation. *Hammer v. State,* 173 Ind. 199, 89 N.E. 850.

For these reasons, we conclude that the acts of the defendant in the manufacture of badges according to the specifications of the sororities here involved and the sale thereof to those properly entitled thereto did not constitute a violation of the statute.

The judgment is reversed.

MR. JUSTICE JACKSON not participating.