366 P.2d 470

**CITY OF PHOENIX, a municipal corporation; the City of Tempe, a municipal corporation, and the City of Tucson, a municipal corporation, Petitioners,**

v.

**J. W. KELLY, State Treasurer of the State of Arizona, Respondent.**

No. 7376.

Supreme Court of Arizona.

En Banc.

Nov. 22, 1961.

John R. Franks, City Atty., Phoenix, William G. Barnes, City Atty., Tempe, H. Earl Rogge, Jr., City Atty., Tucson, for petitioners.

Robert W. Pickrell, Atty. Gen., William Clark Kennedy, Chief Asst. Atty. Gen.,

Philip M. Haggerty, Asst. Atty. Gen., for respondent.

J. LaMar Shelley, Mesa, for amici curiæ, League of Arizona Cities and Towns and its Member Municipalities.

UDALL, Justice.

This is an original proceeding in which petitioners, City of Phoenix, a municipal corporation, City of Tempe, a municipal corporation and City of Tucson, a municipal corporation, seek by mandamus to compel J. W. Kelly, Treasurer of the state of Arizona, to pay petitioners certain moneys as directed by A.R.S. § 42–1341, subd. D (Supp.1961). An alternative writ was granted on July 26, 1961 commanding the Treasurer to so distribute the moneys or show cause why he had not paid petitioners 25% instead of 10% of funds on hand after July 1, 1961.

Section 42–1341 formerly read as follows:

"§ 42–1341. Special privilege tax account; license fee and privilege tax administration fund; appropriation to welfare department and municipalities

"A. The commission shall each day remit all revenues collected under this article to the state treasurer, through the state auditor, and the state treasurer shall credit the payments to a fund designated as the special privilege tax account.

"B. For the purpose of enforcing the provisions of this article, there is appropriated to the commission from taxes collected under this article four per cent of the taxes collected each month which shall be credited by the state treasurer to the license fee and privilege tax administration fund. The fund shall be disbursed only in the manner and in amounts as provided by the legislature in the general appropriation bill, and any amount remaining unexpended in the special fund at the end of the fiscal year shall revert to the general fund.

"C. There is appropriated to the state board of social security and welfare from the taxes collected under this article fifteen per cent of the taxes collected each ·month to be used for the purposes set forth in chapter 1 of title 46.

"D. The state treasurer shall pay ten per cent of the tax collected under this article to the various municipalities of the state in proportion to their population, as shown by the most recent federal census, to be used by the municipalities for any municipal purpose."

In the regular general election on November 8, 1960 this section was amended in accordance with the proposal in an initiative petition filed July 7, 1960. Only sub-

section D was changed; it now provides in pertinent part:

> "D. The state treasurer shall pay twenty-five (25) per cent of the tax collected under this article to the various municipalities of the state * * *."

The initiative measure provided that this amendment should become effective on July 1, 1961.

As of June 30, 1961 the Treasurer had received from the Tax Commission all of the Transaction Privilege Tax receipts for that month. At that time the necessary computations were made respecting the allocations (on the 10% basis) for each of some sixty municipalities. But, owing to time consuming administrative and clerical procedures, the checks were not actually sent to the various municipalities until on or about July 15, 1961.

Petitioners contend the statutory directive is clear that the Treasurer "shall pay" at the rate of "twenty-five (25) per cent of the tax collected" after July 1, 1961 regardless of when the tax collections were received by the Treasurer. On the other hand, the Treasurer argues that the effective date of the amendment, July 1, 1961, restricted payment at the 25% rate to funds received after that date.[1]

Of and by itself the language of Section 42–1341 is little if any help in resolving this issue. Petitioners would have us focus our attention solely on the literal command of subsection D thereof. But this provision is only one of a number of coordinated and interrelated sections in the taxing article. In Street v. Commercial Credit Co., 35 Ariz. 479, 485, 281 P. 46, 48, 67 A.L.R. 1549 (1929) this court observed that: " * * * the statute must be construed as a whole, effect being given, if possible, to all its provisions." See also State Board of Technical Registration v. McDaniel, 84 Ariz. 223, 236, 326 P.2d 348, 357 (1958). And:

> "In accordance with the general rule of construction that a statute should be read as a whole, as to future transactions the provisions introduced by the amendatory act should be read together with the provisions of the original section that were re-enacted in the amendatory act or left unchanged thereby, as if they had been originally enacted as one section. Effect is to be given to each part, and they are to be interpreted so that they do not conflict." I Sutherland, Statutory Construction, § 1934 (3d ed. 1943) at 430.

This cannot be done if petitioners' contention is upheld.

---

1. The Treasurer has been paying municipalities at the 25% rate beginning on or about August 1, 1961. Therefore only the amount of the July 1961 payment is here in issue.

Before the amendment in question Section 42–1341 made provision for allocation of 4% (administrative expenses), 15% (social security and welfare) and 10% (municipalities) of the transaction privilege tax receipts. Section 42–1342 provides for distribution of the remaining funds as follows:

"forty per cent of the remaining amount in the account collected in each calendar month shall be credited by the state treasurer to the general fund of the state, and the other sixty per cent shall be paid by the state treasurer every calendar month to the several county treasurers of the state * * *."

Thus the shares of the respective counties are dependent upon the amounts received by the municipalities. And Section 42–1344, subd. B provides:

"The commission, on or before the first Monday of July each year, shall estimate the anticipated tax monies to be collected under this article payable to each county of the state under this article during the ensuing fiscal year, and shall forthwith transmit the estimate to each county treasurer. Each county board of supervisors shall include the estimate in the county's budget in its estimate of receipts from sources other than property taxes."

When this estimate was submitted in 1959 to the counties for the fiscal year running from July 1, 1960 to July 1, 1961 the municipalities' shares during *all 12 months* were estimated at the 10% rate. Plainly if petitioners' argument prevails county as well as state budget estimates for receipts would be distorted.

The July 1st effective date was not selected at random; it marks the beginning of the fiscal year for state budget purposes. When the people of this state voted to make the amendment effective on July 1, 1961 they intended to start the ensuing year off on a new financial footing. This court will not attribute to them an intent to disrupt the results of the statutory fiscal planning machinery for the year before.

Petitioners concede that had payment of the June collections been made immediately on June 30, 1961 there would be no question for this court's determination. However, the practice of making the actual payments 15 days following the month in which the collections were made has been followed by the Treasurer since provision for municipalities sharing in the receipts from the Transaction Privilege Tax was first made as result of another initiative measure in 1942. We can only assume that had it been intended to alter this procedure express words to that effect would have been included in the 1961 amendment. Cf. Van Veen v. County of Graham, 13 Ariz. 167, 108 P. 252 (1910).

For the above reasons the alternative writ of mandamus heretofore issued is ordered quashed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.