No. 22350.

J. S. DILLON & SONS STORES COMPANY, INC., A FOREIGN CORPORATION, DOING BUSINESS UNDER THE TRADE-NAME OF KING SOOPERS MARKETS v. ELWOOD CARRINGTON.

(455 P.2d 201)

Decided June 9, 1969.

Wormwood, Wolvington, Renner & Dosh, William P. DeMoulin, for plaintiff in error.

FRICKEY & MORRISSEY, MICHAEL F. MORRISSEY, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MCWILLIAMS delivered the opinion of the Court.

ONE Elwood Carrington, hereinafter referred to as the plaintiff, made claim for damages in the sum of ten thousand dollars against J. S. Dillon & Sons Stores Company, Inc., a foreign corporation doing business under the trade name of King Soopers Markets and hereinafter referred to as the defendant.

In the complaint the plaintiff alleged that on January 19, 1964 he was a customer in defendant's store and that as he was leaving the store he was "forcibly and violently seized and assaulted and laid hold of by two private detectives of the defendant" and was "falsely and maliciously accused" of having stolen some prescription drugs from the defendant. It is also alleged in the complaint that the plaintiff was then and there forced by the defendant's agents to empty his grocery bag in the presence of a number of curious onlookers, even though in fact he had not stolen any merchandise whatsoever from the defendant. As a result of the aforesaid "assault and false and malicious accusations and detention of the plaintiff by the agents of the defendant who were then and there acting . . . without any probable or reasonable cause," the plaintiff, according to the allegations in the complaint, was subjected to great indignities, humiliation and disgrace, and as a result of the aforesaid incident also suffered "a severe agitation of the operative area" where he had undergone surgery about a year before for a bleeding peptic ulcer. By answer the defendant admitted its corporate existence and denied the other allegations in the complaint.

Trial by jury resulted in a verdict for the plaintiff in

the sum of $7,000 and by writ of error the defendant now seeks reversal of the judgment entered thereon. The principal reason advanced by the defendant as to why the judgment should be reversed pertains generally to the manner in which the trial court handled C.R.S. 1963, 40-5-31.

In 1961 the General Assembly enacted a series of statutes relating to the general subject of shoplifting. In 1967 the General Assembly made substantial changes in these several laws concerning shoplifting, including an amendment to the particular statute with which we are here concerned. However, that which appears as C.R.S. 1963, 40-5-31 was in effect at all times material to a disposition of the present controversy and that statute reads as follows:

"QUESTIONING OF PERSON SUSPECTED OF SHOP-LIFTING WITHOUT CIVIL LIABILITY. — If any person shall commit the offense of shoplifting as defined in Section 40-5-28, or if any person shall wilfully conceal upon his person or otherwise any unpurchased goods, wares, or merchandise held or owned by any store or mercantile establishment, the merchant or any employee thereof or any peace or police officer, acting in good faith and upon probable cause based upon reasonable grounds therefore, may question such person in a reasonable manner for the purpose of ascertaining *whether or not* such person is guilty of shoplifting as defined in Section 40-5-28. *Such questioning of a person* by a merchant, merchant's employee or peace or police officer shall not render such merchant, merchant's employee or peace or police officer civilly liable for slander, false arrest, false imprisonment, malicious prosecution or unlawful detention." (Emphasis added.)

Without objection, the trial court by instruction advised the jury of the aforesaid statute, the statute itself being set forth verbatim. And by an additional instruction the jury was then instructed, in effect, that if they found that the defendant's agents acted in good faith

upon probable cause based upon reasonable grounds and in a reasonable manner, their verdict should be for the defendant; but that if on the contrary they did not find the defendant's agents acted in good faith upon probable cause based upon reasonable grounds and in a reasonable manner, their verdict should in such case be for the plaintiff.

Defendant argues that inasmuch as the evidence relating to whether its agents in stopping and questioning the plaintiff acted in good faith and upon probable cause based upon reasonable grounds was not in dispute, the issue as to whether its agents acted in such manner posed an issue of law which should have been resolved by the trial court, rather than an issue of fact to be resolved by the jury. And under the evidence, contends the defendant, the trial court should have instructed the jury that the defendant's agents did act in good faith and upon probable cause based upon reasonable grounds. The defendant concedes that the related but separate and distinct issue as to whether its agents thereafter acted in a "reasonable manner" was a disputed issue of fact and that this particular issue should have been submitted to the jury.

The plaintiff counters this argument by stating that the issue as to whether the defendant's agents in the first instance acted in good faith and upon probable cause based upon reasonable grounds and the further and related issue as to whether they thereafter acted in a "reasonable manner" were issues of fact — not of law — and hence were properly submitted to the jury. Permeating the plaintiff's entire argument is the suggestion, if not the outright assertion, that C.R.S. 1963, 40-5-31 affords "protection" if and only if the person questioned on suspicion of shoplifting be actually guilty of shoplifting. In other words, it is intimated — and this was the gist of the closing argument made on behalf of the plaintiff — that if the person thus questioned be in fact not guilty of shoplifting, then the aforesaid statute af-

fords no protection. With such an interpretation of the statute we do not agree.

■ At the outset we readily concede that the statute is certainly not a model of clarity and that it is ambiguous. However, it is the duty of the courts when faced with an ambiguous statute to so construe and interpret the statute under consideration as to avoid an absurd result and give it a reasonable meaning, consistent of course with the language of the statute itself and the legislative intent behind it. *Blanchard v. Griswold,* 121 Colo. 29, 214 P.2d 362; *Kirchwing v. O'Donnell,* 120 Colo. 125, 207 P.2d 819; and *People v. Rapini,* 107 Colo. 363, 112 P.2d 551.

The ambiguity in the statute here under consideration arises in the main from the following language: "... for the purpose of ascertaining whether or not *such person* is guilty of shoplifting ..." (Emphasis added.) The phrase "such person" might at first blush appear to mean only one who has in fact committed the offense of shoplifting. That, of course, simply cannot be the meaning intended by the General Assembly, as according to the statute the questioning of "such person" is for the very purpose of ascertaining "whether or not" the person questioned is guilty of shoplifting. And, of course, one who merely stops and questions a person who has in fact committed shoplifting needs no additional protection.

The concluding sentence in the aforesaid statute also indicates that the protection afforded by the statute is not restricted to those situations where the person stopped for questioning has actually committed the offense of shoplifting. The phrase "Such questioning of a person" can only mean the questioning of a person for the purpose of ascertaining whether or not he is guilty of shoplifting.

■ Obviously then it must be the intent of the statute to afford under certain circumstances a degree of protection to the person who stops and questions another

for the purpose of ascertaining whether such other person is guilty of shoplifting but who it later develops is actually not guilty of any shoplifting. This we believe is clearly borne out by the legislative title to this particular statute, which is "Questioning of Person Suspected of Shoplifting Without Civil Liability." Hence, we hold that the aforesaid statute affords under certain circumstances a degree of protection from and against claims based on slander, false arrest, false imprisonment, malicious prosecution and unlawful detention to one who acting in good faith and upon probable cause based upon reasonable grounds questions another for the purpose of ascertaining whether or not the person thus questioned is guilty of shoplifting and further that the protection thus afforded is not taken away when the questioning establishes that the person so questioned is in fact not guilty of any shoplifting. To interpret this statute otherwise would not only thwart the announced legislative intent, but would reduce the statute to a virtual nullity.

■■ We further hold that under the circumstances disclosed by the record now before us the issue as to whether the defendant's agents in stopping the plaintiff and questioning him acted in good faith and upon probable cause based upon reasonable grounds posed an issue of law which should have been resolved by the trial court under an appropriate instruction to the jury. The evidence on this particular issue was not in dispute. And even the plaintiff concedes that there was no "malicious" action on the part of either of the defendant's agents. Our analysis of the evidence bearing on this particular issue compels us to conclude that as a matter of law the defendant's agents acted in good faith and upon probable cause based upon reasonable grounds and that the jury should have been so instructed. As concerns this particular matter, this is apparently a case of first impression. However, in malicious prosecution cases we have repeatedly held that where the conceded or sub-

stantially undisputed facts and circumstances under which the prosecution was carried on show probable cause for the prosecution the court should take the responsibility for holding — as a matter of law — that there was probable cause for the prosecution and should in such instance direct a verdict for the defendant. See *Konas v. Red Owl,* 158 Colo. 29, 404 P.2d 546; *Montgomery Ward v. Pherson,* 129 Colo. 502, 272 P.2d 643; and *Gurley v. Tomkins,* 17 Colo. 437, 30 P. 344.

In order that our determination that as a matter of law the defendant's agents in the instant case did act in good faith and upon probable cause based upon reasonable grounds may have meaning, we deem it advisable to relate in some detail the evidence bearing upon this particular matter. In the first place, it should be kept in mind that it is conceded that the plaintiff did *not* commit the crime of shoplifting, nor did he "wilfully conceal upon his person or otherwise any unpurchased goods . . ." The defendant's agents were simply mistaken in their belief that the defendant had shoplifted a $12 drug purchase. But as indicated above, the statute affords protection, even though the person questioned be not guilty of shoplifting, assuming of course that the questioning conforms to the various requirements of the statute. What were the facts and circumstances leading up to the questioning of this plaintiff? Let us briefly review the evidence bearing on this point.

Located at the rear of the store where the events occurred which formed the basis for this action is a catwalk and the defendant's security officers sit up in this catwalk and observe through observation windows the customers as they go up and down the aisles. A Mr. Stribling, one of the defendant's agents, observed the plaintiff pass his observation window and he noticed a brown prescription drug package on top of plaintiff's buggy. Moments later, Stribling again saw the plaintiff pass by and he noted that the prescription package no longer was in the buggy. Stribling called over his su-

perior, a Mr. Crews, pointed out the plaintiff to him and related to Crews that which he had just seen. Crews immediately went to the druggist then on duty and after giving the druggist a description as best he could of the plaintiff, inquired as to whether such a person had recently purchased any prescription drugs. The druggist, who was called as a witness upon trial, advised Crews that a person fitting such description had just made a $12 drug purchase. Crews then went to the checkout stand and ascertained that plaintiff had not paid for any $12 drug purchase. It was under these circumstances that Crews and Stribling followed plaintiff to his car and began to question him. These are the undisputed facts which lead us to conclude that as a matter of law the defendant's agents did act in good faith and upon probable cause based upon reasonable grounds. As indicated above, during the trial even the plaintiff abandoned his earlier contention that the defendant's agents acted maliciously. And certainly there is nothing in this record to indicate that in stopping the plaintiff for questioning the defendant's agents acted out of malice or spite and were simply "out to get" the plaintiff. On the contrary, all the evidence is that the defendant's agents, though mistaken, were acting in good faith and in our view upon probable cause based on reasonable grounds when they stopped the plaintiff for questioning.

However, merely because the trial court should have instructed the jury that the defendant's agents in stopping the plaintiff for questioning did act in good faith and upon probable cause based upon reasonable grounds does not mean, however, that there were not other issues to be resolved by the jury. As indicated above, the defendant here concedes that the issue as to whether its agents, even though they under the aforesaid statute had the right to stop and question the plaintiff, thereafter acted in a reasonable manner — which they must also do if they are to be given protection afforded by this statute — was a genuinely controverted

issue of fact which was properly one to be resolved by the jury. We agree. The plaintiff's and the defendant's evidence bearing on this particular point was certainly in conflict and this issue should have been submitted to the jury with appropriate instruction advising the jury as to the limited issue that was being given them.

The judgment is reversed and the cause remanded for a new trial on all issues, such trial to be consonant with the views herein expressed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur in the result.

MR. JUSTICE PRINGLE concurs in the result:

I concur in the result. I do so because I feel that the judgment must be reversed by reason of the failure of the trial court to resolve as a matter of law the ambiguities contained in C.R.S. 1963, 40-5-31. In effect, by giving the statute *verbatim* as an instruction without placing upon it the proper construction, the trial court left the proper meaning of the statute as a matter to be resolved by the jury. The meaning and intent of statutes are never to be determined by juries, but are matters of law to be determined by a court. *E.g., State ex rel. Wheat v. Moore,* 154 Kan. 193, 117 P.2d 598; *Seybert v. County of Imperial,* 162 Cal. App.2d 209, 327 P.2d 560.

I agree with the interpretation placed upon C.R.S. 1963, 40-5-31 by the majority opinion. I would, therefore, hold that it was the duty of the trial court to instruct the jury as to the meaning of the statute involved in accordance with the views expressed in the majority opinion.

I do not agree with that portion of the majority opinion which holds that the trial court should have determined as a matter of law that "probable cause" for the "arrest" existed under the circumstances of this case. The majority opinion implies that whenever the facts and cir-

cumstances surrounding an arrest are undisputed, the court must, as a matter of law, determine whether probable cause exists.

In my view, this is directly contrary to an unbroken line of cases which holds that where reasonable persons might draw different inferences from testimony, the jury must resolve the issues. And I believe that this principle must also apply to false arrest cases as well as to any others. In my opinion, the testimony here would have permitted the jury to infer, if they saw fit to do so, that the security officers acted negligently in making their observations and so were not entitled to the protection of the "probable cause" defense to a false arrest action.

MR. JUSTICE DAY has authorized me to say he joins in the views expressed herein.