680 P.2d 807

Ernest GORTAREZ, Jr., By and Through his duly appointed conservators, Ernest GORTAREZ, Sr. and Georgia Gortarez, Plaintiffs-Appellants,

v.

SMITTY'S SUPER VALU, INC., an Iowa corporation doing business as Smitty's Big Town # 10, Daniel Gibson and Jane Doe Gibson, his wife, John Does 1 thru 6 and Jane Does 1–6, Defendants-Appellees.

No. 16560–PR.

Supreme Court of Arizona, En Banc.

March 14, 1984.

Hughes & Hughes, P.C. by John C. Hughes, Phoenix, for plaintiffs-appellants.

Struckmeyer & Wilson by Mark D. Fullerton, Lloyd J. Andrews, Phoenix, for defendants-appellees.

FELDMAN, Justice.

Petitioner, Ernest Gortarez, Jr., and his parents (plaintiffs) bring this petition for review to contest the trial court's disposition of their claims against respondents, Smitty's Super Value, Inc., and its security officer, Daniel Gibson (defendants). Plaintiffs brought suit against defendants for false arrest, false imprisonment, and assault and battery after Gortarez and his cousin, Albert Hernandez, were detained in the parking lot of Smitty's.

Finding that the circumstances in the case gave reasonable cause for detention, the trial court directed a verdict on the count of false imprisonment and false arrest. The assault and battery count went to the jury, which returned a verdict for defendant Gibson. The court of appeals affirmed by memorandum decision. We accepted review to examine the extent and application of the "shopkeeper's privilege" and because the facts of this case indicate an improper and, we believe, dangerous tendency to extend the statutory grant of the privilege in question. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.

## FACTS

We view the facts in a light most favorable to the party against whom the verdict was directed. *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851 (1982); *Jackson v. H.H. Robertson Co., Inc.,* 118 Ariz. 29, 574 P.2d 822 (1978).

Ernest Gortarez, age 16, and his cousin, Albert Hernandez, age 18, went to Smitty's store on January 2, 1979, around 8:00 p.m. They visited the automotive department, where Hernandez selected a power booster which cost $22.00. While Hernandez was paying for the power booster, Gortarez picked up a 59-cent vaporizer used to freshen the air in cars. Gortarez asked if he could pay for it in the front of the store when he finished shopping. The clerk said yes, but decided that the request was suspicious and had a "hunch" that Gortarez would try to leave the store without paying for the item.

The two cousins wandered through the store, looking at other merchandise, and finally left the store through an unattended check-out aisle. The clerk, Robert Sjulestad, had followed the two through the store, in aisles parallel to where the young men were walking, so that there were occasions when he could not observe Gortarez below shoulder level. Since Sjulestad did not see them dispose of or pay for the vaporizer, he concluded that Gortarez or Hernandez took the item without paying for it.

Sjulestad then told the assistant manager and the security guard, Daniel Gibson, that "[t]hose two guys just ripped us off." According to Gibson's testimony, Sjulestad explained that "they had picked up a vaporizer and asked to pay for it in the front, and then didn't pay for it, as I watched them walk through, and they obviously did not pay for anything at that time."

Gibson and Scott Miller, the assistant manager, along with two other store employees, then ran out of the store to catch the two young men as they were about to get inside their car in the parking lot. Miller went to the passenger side to intercept Gortarez, while Gibson went for Hernandez, who was about to open the car door on the driver's side. Gibson said that he identified himself "as an officer" by showing his badge as he ran up to Hernandez. (Gibson was an off-duty police officer working as a security guard for Smitty's.)[1] Gibson

1. This opinion does not deal with the issues which might arise under A.R.S. § 13-3883, Arrest by Officer Without Warrant. Subsection 4 of that statute would give a "peace officer" the right to arrest upon probable cause to believe that a misdemeanor has been committed and that the person to be arrested committed the offenses. As indicated above, Gibson was an off-duty police officer, employed and paid by Smitty's at the time of the incident. Defendants did not contend at trial that Gibson was "a peace officer" under the provisions of § 13-3883 at the time of the incident, nor that he had attempted, as such an officer, to make an arrest under § 13-3883. Accordingly, we do not reach such issues as the question of whether an "off-

told Hernandez: "I believe you have something you did not pay for." He then seized Hernandez, put his arms on the car and began searching him. Hernandez offered no resistance even though Gibson did not ask for the vaporizer, nor say what he was looking for. In cross-examination, Gibson admitted that Hernandez did nothing to resist him, and, as Gibson searched him, Hernandez kept repeating that he did not have anything that he had not paid for.

Meanwhile, on the other side of the car, flanked by Miller, Gortarez saw Gibson grab Hernandez, push him up against the car, and search him. Gortarez was outraged at this behavior and used strong language to protest the detention and the search—yelling at Gibson to leave his cousin alone. According to Gortarez, he thought the men were looking for the vaporizer because he heard Gibson tell the others to watch out for the bottle, and to look under the car for the bottle. Gortarez testified that he told the men that Hernandez did not have the vaporizer—it was in the store. No one had stopped to check at the counter through which the two exited, where the vaporizer was eventually found in one of the catch-all baskets at the unattended check-out stand.

■■■ Seeing Gibson "rousting" Hernandez, Gortarez came to the defense of his cousin,[2] ran around the front of the car and pushed Gibson away. Gibson then grabbed Gortarez and put a choke hold around Gortarez' neck until he stopped struggling. Both Hernandez and Gortarez testified that the first time that Gibson identified himself to them was after he had restrained Gortarez in a choke hold. There was testimony that Gortarez was held in the choke hold for a period of time even after Gortarez had advised the store employees that he had left the vaporizer in the store. When a carry-out boy told the store employees that he had found the vaporizer in a basket at the check-out stand, the two cousins were released.

Gortarez later required medical treatment for injuries suffered from the choke hold. Plaintiffs sued Smitty's and Gibson for false arrest, false imprisonment, and assault and battery. The case was tried before a jury. At the close of all the evidence, the court directed a verdict for the defendants on the false imprisonment and false arrest count. The assault and battery claim went to the jury, with an instruction on self-defense; the court refused plaintiffs' instruction on withdrawal. The jury returned a verdict for defendant Gibson. The court of appeals affirmed, and plaintiffs petition this court for review.

## FALSE IMPRISONMENT AND FALSE ARREST

### Historical Perspective

■■■ At common law, a private person's privilege to arrest another for a misdemeanor was very limited. The Restatement (Second) of Torts describes the circumstances under which a private person may arrest another without a warrant:

a) if the other has committed the felony for which he is arrested, or

b) if an act or omission constituting a felony has been committed and the actor reasonably suspects that the other has committed such act or omission, or

c) if the other, in the presence of the actor, is committing a breach of the peace or, having so committed a breach

---

duty" police officer is a "peace officer" under the arrest statute or whether he can act as a "peace officer" when he is employed by and purporting to act for a private employer.

**2.** There is a privilege to come to the defense of another where such action is "called for, or sanctioned, by recognized social usage, or commonly accepted standards of decent conduct." The privilege permits use of "all force reasonably necessary for such defense...." W. Prosser, *Law of Torts* § 20, at 112–113 (4th edition 1971). Thus, although Hernandez was the one physically seized, Gortarez was entitled to defend Hernandez—and himself—to the same extent as if Gortarez had been physically seized. *Id.* Further, false arrest or imprisonment does not require physical detention—the tort may be committed by intimidation. *Id.,* § 11, at 42–43. None of these issues were raised at trial.

of the peace, he is reasonably believed by the actor to be about to renew it, or

d) if the actor has attempted to commit a felony in the actor's presence and the arrest is made at once or upon fresh pursuit, or

e) if the other knowingly causes the actor to believe that facts existed which would create in him a privilege to arrest under the statement in Clauses (a) to (d).

*Id.,* § 119. Arizona has codified the common law. So far as relevant here, the statute provides that a private person may make an arrest for a misdemeanor when the person to be arrested has committed a misdemeanor amounting to a breach of the peace in the presence of the person making the arrest. § 13–3884, 5A A.R.S. Thus, at common law and by statute, the privilege to arrest for misdemeanors without a warrant is limited to those misdemeanors which constitute a breach of the peace.[3] In the case of misdemeanors such as shoplifting, there is no breach of the peace, and no common law privilege to arrest. Therefore any common law privilege would exist only for recapture of chattel. There is a limited privilege for an owner whose property has been wrongfully taken, while in fresh pursuit, to use reasonable force to recapture a chattel. Prosser, *supra,* § 22 at 117. An important caveat to this privilege is that the actor must be correct as to the facts which he believes grant him the privilege, and faces liability for damages resulting from any mistake, however reasonable. *Id.* The force privileged must be reasonable under the circumstances, and not calculated to inflict serious bodily harm. Ordinarily, the use of any force at all will not be justified until there has been a demand made for the return of the property. *Id.*

Thus, privileges for misdemeanor arrest traditionally available at common law recognize no privilege to arrest for ordinary "shoplifting." Under this rule a shopkeeper who believed that a customer was shoplifting was placed in an untenable position.

Either the shopkeeper allowed the suspect to leave the premises, risking the loss of merchandise, or took the risk of attempting to recapture the chattel by detaining the customer, facing liability for the wrongful detention if the person had not stolen merchandise. *Id.* § 22 at 121.

As Prosser noted, shoplifting is a major problem, causing losses that range into millions of dollars each year. *Id.; see also Kon v. Skaggs Drug Centers, Inc.,* 115 Ariz. 121, 563 P.2d 920 (App.1977). There have been a number of decisions which permit a business person for reasonable cause, to detain a customer for investigation. Prosser, *supra* at 122. This privilege, however, is narrow; it is

confined to what is reasonably necessary for its limited purpose, of enabling the defendant to do what is possible on the spot to discover the facts. There will be liability if the detention is for a length of time beyond that which is reasonably necessary for such a short investigation, or if the plaintiff is assaulted, insulted or bullied, or public accusation is made against him, or the privilege is exercised in an unreasonable manner....

*Id.*

The developing, common law "shopkeeper's privilege" described by Prosser was incorporated into the second Restatement of Torts with the addition of section 120A —Temporary Detention for Investigation:

One who reasonably believes that another has tortiously taken a chattel upon his premises, or has failed to make cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts.

Comment (a) states that this section is necessary to protect shopkeepers from the dilemma we have just described. Comment (d) explains that the privilege differs from the privilege to use reasonable force to recapture a chattel, because it protects the

---

**3.** A mistaken belief that a breach of the peace has been committed does not confer a privilege under Clause (c). Restatement (Second) of Torts, § 119 Comment (*o*). (A peace officer is privileged under § 121(c) where the one arrested is a participant in an affray.)

shopkeeper who has made a reasonable mistake regarding the guilt of the suspect. As noted in Comment (g), the privilege is one of detention only.

We have not had occasion to pass upon the applicability of the Restatement rule. Instead Arizona has adopted the shopkeeper's privilege by statute, which provides in pertinent part:

C. A merchant, or his agent or employee, *with reasonable cause, may detain* on the premises *in a reasonable manner and for a reasonable time* any person suspected of shoplifting ... *for questioning or summoning a law enforcement officer.*

D. Reasonable cause is a defense to a civil or criminal action against a peace officer, merchant or an agent or employee of such merchant for false arrest, false or unlawful imprisonment or wrongful detention.

A.R.S. § 13–1805 (emphasis supplied).

■■■■ The trial court was evidently of the view that by the terms of subsection D, reasonable cause, alone, was a defense. We disagree; we believe that the statutory shopkeeper's privilege, like that described in the Restatement, involves all of the elements noted in subsection C. Subsections C and D of § 13–1805 must be read together. Applying subsection (D) by recognizing the privilege defense upon a showing of "reasonable cause" without the limitations contained in subsection (C), would render the latter meaningless. Where the language of the statute is susceptible of several interpretations, the court will adopt one which is reasonable and avoids contradictions or absurdities. *Schilling v. Embree,* 118 Ariz. 236, 575 P.2d 1262 (App.1977); *State Board of Dispensing Opticians v. Schwab,* 93 Ariz. 328, 380 P.2d 784 (1963). Also, we must construe a statute as a whole and give effect to all its provisions. *Adams Tree Service, Inc. v. Transamerica Title Insurance Co.,* 20 Ariz.App. 214, 511

P.2d 658 (1973); *City of Phoenix v. Kelly,* 90 Ariz. 116, 366 P.2d 470 (1961).

■■■■ To invoke the privilege, therefore, "reasonable cause" is only the threshold requirement. Once reasonable cause is established, there are two further questions regarding the application of the privilege. We must ask whether the purpose of the shopkeeper's action was proper (*i.e.,* detention for questioning or summoning a law enforcement officer).[4] The last question is whether the detention was carried out in a reasonable manner and for a reasonable length of time. If the answer to any of the three questions is negative, then the privilege granted by statute is inapplicable and the actions of the shopkeeper are taken at his peril. If the shopkeeper is mistaken and the common law recapture privilege is therefore also inapplicable, the seizure is tortious.

### Reasonable Cause

■■■■ Under statutes permitting the detention of suspected shoplifters, "reasonable cause" generally has the same meaning as "probable cause." *See* Annot., 47 A.L.R.3d 998, at 1005–1006 n. 15 (1973). Our court of appeals has held that reasonable cause under this statute is the "reasonable cause standard of arrest." *Kon v. Skaggs Drug Centers, Inc.,* 115 Ariz. at 123, 563 P.2d at 922. We agree that for the purposes of this privilege, reasonable cause and probable cause seem equivalent.

■■■■ Reasonabie cause is not dependent on the guilt or innocence of the person, or whether the crime was actually committed. *Tota v. Alexander's,* 63 Misc.2d 908, 314 N.Y.S.2d 93, 95 (1968). In *Tota,* the court stated that one may act on what proves to be an incorrect belief provided the facts show that the belief was reasonable. *Id.* As our court of appeals properly stated in *Kon,* the "reasonable cause" clause is inserted in the statute generally to cover those situations where no one actually sees

---

**4.** As indicated above, the Restatement rule allows for detention for "investigation of the facts," while the Arizona statute allows for detention "for questioning or summoning...." Of course, we adopt the statutory test.

the theft. 115 Ariz. at 123, 563 P.2d at 922.

■ Reasonable cause is generally held to be a question of law to be determined by the court. Annot. *supra* § 2(b). In *Kon*, the court of appeals held that the issue of reasonable cause to detain a shoplifter is a matter of law for the court to decide. 115 Ariz. at 123, 563 P.2d at 922. It would be more correct to say that reasonable cause is a question of law for the court *where the facts or inferences from them are not in dispute.* When there is a dispute, then the issue of reasonable cause becomes a mixed question of law and fact, and it is for the jury to determine the disputed facts, Annot. *supra* § 2(b); *see also Wisniski v. Ong*, 84 Ariz. 372, 329 P.2d 1097 (1958).

■ In the case at bench, the facts supporting reasonable cause are as follows: the clerk saw Gortarez with the item when he asked if he could pay for it at the front. The clerk followed the two young men through the store, and did not see them either deposit the item or pay for it as they left. Although the question of reasonable cause in the instant case may have been close [5] we defer to the trial court's better opportunity to see and judge the credibility of witnesses and uphold it on the specific finding that conflicting inferences could not be drawn from the facts and that reasonable cause existed as a matter of law.

### Purpose of the Detention

■ The statute provides this privilege for the express and limited purpose of detention for investigation by questioning or summoning a law enforcement officer. A finding of detention for the proper purpose could not have been made as a matter of

law on the state of the evidence before the trial judge, since there was no evidence of either questioning or summoning of officers. At best, this was a question for the jury, because although there was no questioning, it is possible that the intent of the employee was to question or call officers.

### Reasonableness of the Detention

■ Assuming there was reasonable cause for the detention, and that the detention was for a proper purpose, the privilege still may not attach if the merchant does not detain in a reasonable manner and for a reasonable time. As with the question of reasonable cause, the issue of reasonableness of the detention is one for the court to decide as a matter of law where there is no conflict in the evidence as to the length of time or the circumstances under which the plaintiff was held. Where the facts are in dispute or where different inferences may be drawn from undisputed facts, it is for the jury, under proper instructions from the court, to determine the reasonableness of the detention. *J.S. Dillon & Sons Stores, Co. v. Carrington*, 169 Colo. 242, 455 P.2d 201, 205 (1969); *see also Delp v. Zapp's Drug and Variety Stores*, 238 Or. 538, 395 P.2d 137, 140 (1964).

■ Comment (h) to § 120A of the Restatement (Second) of Torts states that the use of force is never privileged unless the resistance of the suspected thief makes the use of such force necessary for the actor's self-defense.

Reasonable force may be used to detain the person; but ... the use of force intended or likely to cause serious bodily harm is never privileged for the sole purpose of detention to investigate, and it becomes privileged only where the re-

---

**5.** The clerk testified that he was not able to observe the young men below their shoulders at least twice during the time he followed them. He was unable to see Gortarez deposit the vaporizer at the unattended checkout stand through which the two exited. Some courts have found that although the statutes creating the qualified shopkeeper's privilege do not create a specific duty to investigate, failure of store employees to investigate is relevant to the determination of whether there was reasonable cause

to detain. *Weissman v. K-Mart Corporation*, 396 So.2d 1164 (App.Fla.1981); *see also J.S. Dillon & Sons Stores Co. v. Carrington*, 169 Colo. 242, 455 P.2d 201 (1969); *Lukas v. J.C. Penney Company*, 233 Or. 345, 378 P.2d 717 (1963). We agree that the nature and extent of investigation is part of the determination of reasonable cause. Actual verification by seeing the customer leave the store with merchandise without paying for it is not a necessary element to establish reasonable cause under this statutory privilege.

sistance of the other makes it necessary for the actor to use such force in self-defense. In the ordinary case, the use of any force at all will not be privileged until the other has been requested to remain; and it is only where there is not time for such a request, or it would obviously be futile, that force is justified. *Id.* The Arizona statute is essentially a codification of the common law shopkeeper's privilege. The limitations on the use of force are obviously wise. We hold that the principle quoted is applicable to our statutory requirement that the detention be carried out in a "reasonable manner."

■ Under the restrictions given above, there was a question whether the use of force in the search of Hernandez, and, more importantly, in the restraint of Gortarez, was reasonable. There was no request that the two young men remain. No inquiry was made with regard to whether Hernandez had the vaporizer. Gibson testified that Hernandez gave no indication of resistance and made no attempt to escape. The possible theft of a 59 cent item hardly warrants apprehension that the two were armed or dangerous. There was, arguably, time to make a request to remain before Gibson seized Hernandez and began searching him.[6] Also, there is no indication that such a request would *obviously* have been futile. The evidence adduced probably would have supported a finding that the manner of detention was unreasonable as a matter of law. At best, there was a question of fact; there was no support for the court's presumptive finding that as a matter of law the detention was performed reasonably.

The court directed a verdict for defendants on the false arrest and imprisonment counts. In so doing, it necessarily found as a matter of law that there was reasonable cause, and that the seizure and detention were undertaken for a proper purpose and in a reasonable manner. We hold that the

court erred in its findings with respect to both the purpose and manner of detention. This requires reversal and retrial. At the new trial evidence on the three issues should be measured against the principles set forth in this opinion.

## ASSAULT AND BATTERY

■ At the close of the evidence, the trial court suggested that a motion by defendant Gibson to amend his answer to conform with the evidence presented at trial would be appropriate to include the affirmative defense of self-defense. Rule 15(b), Ariz.R.Civ.P. The trial court granted that motion, and gave the jury an instruction on self-defense. Plaintiffs requested that the judge give a more complete instruction on self-defense to include a justification instruction on withdrawal. The instruction given at trial was:

Defendant has offered evidence that he acted in self-defense. Self-defense requires you to find the defendant not liable if the following three conditions are met.

(1) The defendant reasonably believed that he was in immediate physical danger; and

(2) The defendant acted solely because of this belief; and

(3) The defendant used no more force than appeared reasonably necessary under the circumstances.

Self-defense justifies the use of force only while the apparent danger continues. The right to use force in self-defense ends when the apparent danger ends.

Actual danger is not necessary to justify the use of force in self-defense. It is enough if the defendant reasonably believed he was in physical danger.

Plaintiffs assert that the trial court's refusal to instruct based on provisions of

---

**6.** Again, we note that only Hernandez was physically seized. However, a jury could find Gortarez, the passenger, was prevented from leaving both because the driver of the car was seized and because the store manager was at Gorta-

rez's elbow and presumably would have restrained him if he had tried to leave. Defendants have not argued that the lack of direct physical force to Gortarez obviated a false arrest or false imprisonment claim.

A.R.S. § 13–404 was error. That section provides that the threat of physical force against another is not justified:

> If the person provoked the other's use or attempted use of unlawful physical force, unless the person withdraws from the encounter or clearly communicates to the other his intent to do so reasonably believing he cannot safely withdraw from the encounter.

§ 13–404(B)(3).

Plaintiffs claim the evidence supported the request to instruct on the necessity for the aggressor to withdraw in order to justify the use of reasonable force in self-defense. The trial court's refusal of the modified instruction was based on the view that the false imprisonment and false arrest claims basically were unfounded at the time Gortarez came around the front of the car. This is the point, the judge ruled, when the second count—assault and battery—began. Viewed in this light, Gibson could not have been the aggressor because, by directing a verdict on false arrest and false imprisonment, the judge had ruled as a matter of law that Gibson's actions against Hernandez were justified. Thus, Gortarez would have been the aggressor when he rounded the front of the car and pushed Gibson away from his cousin and the denial of plaintiff's requested instruction would have been warranted.

However, since we have held that the jury could find that Gibson's actions exceeded the privilege, the evidence would support a finding that Gibson was the aggressor, and Gortarez acted in response to that aggression.[7] Thus an instruction on the necessity of withdrawal based on A.R.S. § 13–404(B)(3) was warranted by the evidence, and appropriate to complete the self-defense instructions and enable the jury to decide whether, under the facts, Gibson properly acted in self-defense when he put Gortarez in a choke hold. The trial court erred in denying that instruction.

We therefore reverse and remand for new trial on all counts.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, dissenting.

If the case at issue had involved a claim by Albert Hernandez, the cousin of the plaintiff, much of what is written in the majority opinion would be acceptable. The vital factor is that Hernandez is not the plaintiff, but the majority opinion ignores this fact by setting forth legal principles which have no application to the facts as applied to the plaintiff Gortarez.

The law applicable to the issues of false arrest and false imprisonment is purely statutory. A.R.S. § 13–1805, the applicable statute, is broader in scope than the rule advanced by the Restatement, a fact which is acknowledged by the majority but relegated to a footnote. Page 813 footnote 4. The provisions of the statute material to this case and in effect at the time provided:

> "C. A merchant, or his agent or employee, with reasonable cause, may detain on the premises in a reasonable manner and for a reasonable time any person suspected of shoplifting as defined in subsection A for questioning or summoning a law enforcement officer.
>
> "D. Reasonable cause is a defense to a civil or criminal action against a peace officer, merchant or an agent or employee of such merchant for false arrest, false or unlawful imprisonment or wrongful detention."

Focusing on the action taken by the defendant security guard against the non plaintiff Hernandez, the majority holds that unreasonable force against Hernandez resulted in his false arrest and imprisonment, which in turn also resulted in the false arrest and imprisonment of the plaintiff. It is conceded by the majority that plaintiff

---

7. See n. 2, *ante,* at 811. If Gortarez was coming to his cousin's defense, he was entitled to use whatever force Hernandez was entitled to use. If Hernandez was being wrongfully arrest-

ed or imprisoned, he was entitled to use such force as was reasonable to resist Gibson's physical search.

Gortarez was initially not touched by the defendant's agent. Page 815 footnote 6. Apparently by some theory of transferred intent or otherwise any unreasonable restraint of the non plaintiff became unreasonable as to the plaintiff.

The agents of the defendant had reasonable cause to detain the plaintiff and his cousin, a position which the majority concedes. Since the defendant's agents had reasonable cause to detain the plaintiff, this must of necessity include the authority to keep him from leaving the parking lot; thus any action against the plaintiff's driver adds nothing to the issue of the right to detain the plaintiff. He was subject to detention irrespective of any action taken to detain or release his cousin.

The individual who had picked up the items thought to have been stolen was the plaintiff. Under A.R.S. § 13–1805(C) the defendant's employees were entitled to detain the plaintiff in a reasonable manner and for a reasonable time for questioning or summoning a law enforcement officer. There is absolutely no evidence in the record that any unreasonable action was directed against the plaintiff. He was not touched or restrained in any manner. This is borne out by the record which shows that no agent of the defendant company sought to stop the plaintiff from leaving the passenger's side of the automobile to approach and challenge the security guard who was searching his cousin. Any restraint of the plaintiff, actual or by implication, was accomplished in a reasonable manner.

The directed verdict on the claim for false arrest and false imprisonment should be affirmed.

The case which the majority presents on the assault and battery issue is of course different from that presented at trial. The defense of others was not the issue tried in the superior court, but it is the defense suggested in the majority opinion. Page 816 footnote 7. To avail himself of that privilege the plaintiff is required, among other things, to show that there was a necessity for the violent action to protect the third person. Restatement, Second, *Torts* § 76 and comment d. I am not persuaded that the plaintiff demonstrated any necessity for his violent action particularly in light of the fact that his cousin did not ask for help or seem to need any assistance. In any event I believe any issue about the defense of others should not be considered as decided in this appeal. Since the matter was not developed in the superior court I believe that it should remain open for decision by the trier of fact in the retrial.

As the case was tried in the superior court and based on the issues presented to the Court of Appeals, I believe that the Court of Appeals was correct in affirming the judgment of the superior court. I dissent from the opinion of the court.