732 P.2d 214

Patrick E. BURKE, Plaintiff/Appellee,

v.

The ARIZONA STATE RETIREMENT SYSTEM; The Arizona State Retirement Board; Larry Cross; Junius Driggs; Lucia Ann Fakonas; Annice Husband; F. Lee Jacquette; and Alton Washington, members of the Arizona State Retirement System Board, Defendants/Appellants.

CITY OF PHOENIX EMPLOYEES' RETIREMENT BOARD, Plaintiff/Appellant,

v.

Patrick E. BURKE and Sarah R. Burke, his wife; Arizona State Retirement System Board, Defendants/Appellees.

No. 2 CA–CIV 5696.

Court of Appeals of Arizona, Division 2, Department B.

May 9, 1986.

Reconsideration Denied May 23, 1986.

Review Denied January 22, 1987.

Sparks & Siler, P.C. by Donald O. Loeb, Scottsdale, for plaintiff/appellee/defendants/appellees Burke.

Robert K. Corbin, The Atty. Gen. by Michael N. Harrison and David Rich, Phoenix, for defendant/appellant/defendant/appellee Arizona State Retirement Bd.

Snell & Wilmer by Michael P. Anthony, Phoenix, for plaintiff/appellant City of Phoenix Employee's Retirement Bd.

## OPINION

LACAGNINA, Judge.

From 1959 to 1974 plaintiff, Patrick Burke, was employed by the City of Phoenix and contributed to its retirement plan. From 1976 through 1983, he was employed by the City of Scottsdale and made retirement contributions to the Arizona State Retirement System (ASRS). Late in 1983, he elected to retire and attempted to transfer his city retirement credits to the state system under A.R.S. § 38–781.24, as it existed at that time. That section read:

> If an employee of a charter city which was not participating in the state retirement system on January 1, 1983 becomes employed by a political subdivision which is an employer member of the state retirement system, or if an employee of a political subdivision which is an employer member of the state retirement system becomes employed by a charter city which was not participating in the state retirement system on January 1, 1983, the employee may apply for a transfer of his total credited service within one year after his employment change and his total credited service shall be transferred from one retirement system to the other. The retirement system which transfers credited service to the other retirement system shall pay an amount equal to the

actuarial equivalent of the present value of all benefits earned to the date of the employee's employment change to the other retirement system in order to prevent any increase in that retirement system's unfunded liability.

The present value of Burke's future benefits under the City plan was $45,525. ASRS determined that the amount it needed to fully fund Burke's retirement under the state system was $128,000 and declined to credit Burke's Phoenix service to his state retirement. Burke appealed this administrative decision to superior court. The City of Phoenix Employees' Retirement Board (CPERB) filed a declaratory judgment action against Burke and ASRS seeking a declaration of its rights and liabilities under § 38–781.24. That action was consolidated with Burke's administrative appeal. The resulting judgment ordered ASRS to pay Burke a pension based on his years of service with both Phoenix and Scottsdale and ordered CPERB to pay ASRS "an amount equal to the actuarial equivalent of the present value of all benefits" earned by Burke "in such a manner as to prevent any increase ... in the unfunded liability" of ASRS. CPERB and ASRS appeal. We affirm as modified.

Former A.R.S. § 38–781.24 mandates both the transfer of credited retirement service and the transfer of the present cash value of earned future benefits at the time of changed employment. The last phrase of the statute explains that a reason for requiring transfer of the present cash value of earned future benefits at the date of employment change is to prevent an increase in the unfunded liability of the other retirement system. The problem presented to us arises from disagreement over the amount required for transfer from Phoenix to ASRS before it will pay Burke's pension from the state retirement fund with credit for the 15 years transferred to ASRS when he changed employment.

The statute must be construed as a whole, giving effect to all of its provisions and if it is susceptible of several interpretations, the court will adopt one which is reasonable and avoids contradictions or ab-

surdities. *Gortarez v. Smitty's Super-Valu, Inc.*, 140 Ariz. 97, 103, 680 P.2d 807, 813 (1984). To determine legislative intent, we look first to the words of the statute. *Arizona Board of Accounting v. Keebler*, 115 Ariz. 239, 564 P.2d 928 (App.1977). When construing the statute, we presume that what the legislature means, it will say. *Padilla v. Industrial Commission*, 113 Ariz. 104, 546 P.2d 1135 (1976).

█ Applying these canons of construction to § 38–781.24, we construe it to require Phoenix to transfer 15 years of credited retirement service to ASRS together with $45,525. When those transfers are completed, ASRS is required to pay Burke a pension based on total credited years. It is plain from the language of the statute and the history of the legislation that the legislature intended to provide an opportunity for governmental employees who have changed employment to obtain a pension from the last employer without losing credit for the faithful services performed for the prior governmental agency.

Burke worked for two cities. He is entitled to retire, and the legislature intended, by enactment of § 38–781.24, that he receive a pension from his last employer based on the total years of credited service. Without disregarding the intent of the legislators, as clearly stated in the statute, and without substituting our words for theirs, the last sentence is more easily read if the last phrase is placed first in the sentence. In other words, to give effect to the statute, the last sentence could be read as saying, "In order to prevent any increase in that retirement system's unfunded liability, the retirement system which transfers credited service to the other retirement system shall pay an amount equal to the actuarial equivalent of the present value of all benefits earned to the date of the employee's employment change." Read in that fashion, it is clear the legislature has determined what amount is required to be transferred from one fund to the other to satisfy compliance with the statute read as a whole. If compliance

with the mandates of the legislature, by paying the amount determined necessary upon transfer of credits from one fund to the other, results in an increase in the unfunded liability of the transferred retirement plan, that is a problem to be solved by the legislature (already accomplished by later legislation) but it does not deprive Burke of rights given him by the statute or increase Phoenix's liability for amounts in excess of the funds required by the statute.

The actuarial equivalent of the present value of Burke's benefits earned with the City of Phoenix at the date of his employment change is $45,525. This is the amount Phoenix is required to pay ASRS. No other amount was required by the legislature, and we are not permitted under any canon of statutory construction to compute a different amount. ASRS must accept the transfer of credits and the amount required by statute and has no authority to refuse to pay Burke his pension rights. Once the legislature calculated and determined the amount which must be transferred, there is no room for an interpretation which requires a different amount. Furthermore, we cannot rule that if that amount increases the unfunded liability of the transferees' fund, it can refuse the transfer and the payment of earned pension. It is argued that A.R.S. § 38-781.24 may only be effective and may only cover the transfer of an employee from one retirement system to another if both systems were identical, both in terms of contributions and benefits. We do not believe the legislature intended to enact a statute to benefit long term employees of the state and municipalities that would only be effective in the rarest of situations.

The dissent takes the position that Burke is not entitled to relief because it is impossible to comply with the statute. To construe a statute so that no one can comply with its provisions and transfer to another pension plan unless both plans are exactly alike can only lead to the conclusion that the legislature enacted a meaningless and absurd statute. We have construed the statute to give effect to stated legislative intent and purpose which permits an employee to change employment without losing credited benefits.

## LEGISLATION CONSTITUTIONAL

ASRS argues that compliance with § 38-781.24 would constitute an unlawful gift to Burke and therefore violate the Arizona Constitution, art. IX, § 7. Pension plans for public employees are for a public benefit and the requirement of transferring $45,525 from the Phoenix plan to the state fund together with Burke's public service of 22 years is more than sufficient consideration for the benefits to be received. Payment of Burke's pension does not violate the Arizona Constitution. *Wistuber v. Paradise Valley Unified School District*, 141 Ariz. 346, 687 P.2d 354 (1984); *Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965).

## ATTORNEY'S FEES

The lower court had no authority to award Burke's attorney's fees, and the award was prohibited by A.R.S. §§ 12-348(G) and 12-341.01. Burke never proceeded under any contract theory but proceeded to determine his eligibility and entitlement to a monetary benefit or its equivalent.

We reverse the award of attorney's fees and affirm the judgment of the lower court as modified so that the judgment orders the City of Phoenix Employees' Retirement System to pay forthwith to the Arizona State Retirement System $45,525.

BIRDSALL, J., concurs.

LIVERMORE, Presiding Judge, dissenting.

The issue on which I part company with the majority is whether the phrase "in order to prevent any increase in that retirement system's unfunded liability" in former A.R.S. § 38-781.24 is a legislative mandate, as I believe, or the expression of a legislative hope always to be defeated, as the majority holds. To read that phrase as merely a hope is to impute to the legislature the doing of a pointless act. That is

hardly giving effect to all of a statute's provisions as *Gortarez* requires. Further, the amendment of the statute the next year to require explicitly that the pension be fully funded in the transferee system is a clear indication of the pre-existing legislative intent. *State v. Sweet,* 143 Ariz. 266, 693 P.2d 921 (1985); *Police Pension Board of the City of Phoenix v. Warren,* 97 Ariz. 180, 398 P.2d 892 (1965). Having concluded that the legislature intended that the transfer of credited retirement system be possible only where no unfunded liability would be created, I would apply the canons of construction in *Gortarez* to permit the transfer of such credited service only where the transferred funding does not increase the unfunded liability of the transferee system.