Terry A. DELL; Pamela Dell, Plaintiffs-Appellants,

v.

MONTGOMERY WARD AND COMPANY, INC., an Illinois Corporation, Defendant-Appellee.

No. 85–1824.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1986.

Decided Feb. 17, 1987.

Laura J. Campbell (argued), Detroit, Mich., for plaintiffs-appellants.

Charles C. DeWitt, Jr. (argued), Dykema, Gossett, Spencer, Goodnow, & Trigg, Detroit, Mich., for defendant-appellee.

Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.

RYAN, Circuit Judge.

This is another in a seemingly endless line of *Toussaint*[1] inspired wrongful termination cases from Michigan. The district court found the plaintiffs' claims to be without merit and entered a summary judgment accordingly. We agree and affirm.

## I.

Plaintiff Terry Dell, a District Loss Prevention Manager for Montgomery Ward, had been employed by the company for twelve years when he was fired for deceptively covering up the wrongful conduct of one of his subordinates; conduct for which Dell should have, but did not, fire the subordinate.

Dell filed a four-count complaint against his former employer in the Michigan court, and the case was promptly removed to the United States District Court. Montgomery Ward moved for summary judgment and the motion was granted as to count I, the *Toussaint* breach of contract claim. The remaining counts were dismissed for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). Plaintiffs appeal only the adverse summary judgment on the *Toussaint* breach of contract claim.

## II.

In *Toussaint, supra,* the Michigan Supreme Court recognized an exception to the well-established rule that oral employment contracts and employment contracts for an indefinite period are terminable at the will of either party, with or without cause. The court stated that it was holding "only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." *Id.* at 610, 292 N.W.2d 880. The court explained that if one bargains for job security and for dismissal only for just cause, an employer is bound to those contractual terms. *Id.* at 610–12, 292 N.W.2d 880. *Toussaint* went on to say:

> "Where the employer has not agreed to job security, it can protect itself by entering into a written contract which explicitly provides that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer."

Id. at 612 n. 24, 292 N.W.2d 880.

*Valentine v. General American Credit, Inc.,* 420 Mich. 256, 362 N.W.2d 628 (1984), echoed *Toussaint:*

> "*Toussaint* makes employment contracts which provide that an employee will not be dismissed except for cause enforceable in the same manner as other contracts. It did not recognize employment as a fundamental right or create a new 'special' right. The only right held in *Toussaint* to be enforceable was the right that arose out of the promise not to terminate except for cause.
>
> "Employers and employees remain free to provide, or not to provide, for job security.... The obligation which gave rise to this action is based on the agreement of the parties; it is not an obligation imposed on the employer by law. This is an action for breach of contract and not a tort action."

*Id.* at 258–59, 362 N.W.2d 628 (footnote omitted). Thus, *Toussaint* does not create any rights in the employee of its own force,

---

**1.** *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980).

it merely holds that all provisions of an employment contract are enforceable.

In order to sustain his breach of contract claim, plaintiff in this case must show a contractual provision in his employment relationship with Montgomery Ward which forbids Ward to fire him save for just cause.

Dell argues that Ward's Progressive Discipline Reference Guide (PDRG), which is published by the company and distributed to its supervisory personnel for use in disciplining employees under their supervision, creates by implication an employment contract provision that Ward would dismiss employees only for just cause and after "due process." The PDRG sets forth certain procedures a supervisor should follow before disciplining or discharging an employee. Dell claims that the due process protections detailed in the PDRG giving an employee who is charged with misconduct the right to know the offense with which he is charged, the right to an objective and fair investigation, and the right to defend his behavior, "give rise," in the language of *Toussaint,* to a "reasonable non-subjective, legitimate expectation" that Montgomery Ward employees will be discharged for just cause only. Dell claims he was not discharged for just cause and was not afforded the procedural "industrial due process" protections mandated by the PDRG.

### A.

■ We address the last claim first. Quite aside from the fact, as explained hereafter, that the PDRG creates no contractual employment rights, it is clear from the record that there is no genuine issue about the fact that plaintiff was advised of the charges against him, had the benefit of a thorough investigation of the charges, and responded to them in writing. In addition, as the trial court correctly observed:

"Alternatively, Plaintiffs' argument fails because they have not alleged, ... in their response to Defendant's motion, any facts which if established would prove that Defendant Montgomery Ward failed to comply with the 'industrial due process' scheme contained in the PDRG."

Because there is no genuine issue of material fact about that matter, the trial court did not err in rejecting that aspect of the plaintiffs' claim.

### B.

■ The plaintiffs' more substantial claim—that the PDRG due process provisions created a legitimate expectation that Dell had a contract of employment calling for discharge only for just cause—is equally without merit. The PDRG explicitly declares, at p. 17, that the procedures spelled out in the guide do not form an employment contract:

"Although employment with Montgomery Ward is not for a fixed term or definite period, and may be terminated at any time either by the employee or the Company, the Company has developed a procedure that it expects its supervisors to follow when exercising their right to either discipline employees or sever the employment relationship. *This procedure does not form an employment contract.*" (Emphasis added.)

In addition, Ward's Human Resources Policy Manual, which was in effect at the time of plaintiff's discharge, provides:

"Employment at Montgomery Ward is for no definite period and may, regardless of the time and manner of payment of wages and salary, be terminated at any time by the company or by an employee, *with or without cause, and without any previous notice.* Further, no organization manager or representative of Montgomery Ward other than the President and Chief Executive Officer or the Executive Vice President-Human Resources, has the authority to enter into an agreement for employment for any specified period of time or to make any agreement contrary to the foregoing. This lack of guarantee or employment contract also applies to other benefits, working conditions, and privileges of employment at Montgomery Ward."

Moreover, almost as if anticipating the argument being made by the plaintiff today, the defendant published a Human Resources Policy Manual in which, referring to the procedural protections described in the PDRG, it is stated:

"Montgomery Ward's representatives must follow the established procedures when they exercise the company's right to discipline or discharge employees. *These procedures should not be interpreted as constituting an employment contract, however. Employment with the company is not fixed in length and may be terminated at any time by any employee or by the company with or without cause.*" (Emphasis added.)

Despite the apparent clarity of those disclaimers, the plaintiff insists, nevertheless, that the PDRG's extensive due process procedures send ambiguous and conflicting signals to employees, giving them a legitimate non-subjective expectation that they will only be fired for just cause and after due process. He argues that because of these conflicting signals, a jury question exists as to whether the PDRG created a "nontermination absent just cause and due process" provision in the employment relationship.

Again, as if anticipating such an argument, the defendant in this case appears to have followed the gratuitous advice of the Michigan Supreme Court given in *Toussaint* and has done precisely what that court advised employers to do who wished to avoid *Toussaint* liability and the kind of claim that is before us today.

The Michigan court stated:

"Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We would hold only that an employer's *express agreement* to terminate only for cause, *or statements of company policy and procedure to that effect,* can give rise to rights enforceable in contract.

\* \* \* \* \* \*

"If Blue Cross or Masco had desired, they could have established a company policy of requiring prospective employees to acknowledge that they served at the will or the pleasure of the company and, thus, have avoided the misunderstandings that generated this litigation."

*Toussaint,* 408 Mich. at 610, 612, 292 N.W.2d 880 (emphasis added).

Apparently heeding that 1980 Michigan Supreme Court advice, Montgomery Ward, in 1982, had Dell and all other Ward employees execute a "sign off" sheet expressly acknowledging that employment was at will and may be terminated with or without just cause:

"I have read and fully understand the rules governing my employment with Montgomery Ward. I agree that, I will conform to these rules and regulations and, further understand and agree that my employment is for no definite period and may, regardless of the time and manner of payment of my wages and salary, *be terminated at any time by Montgomery Ward or me, with or without cause, and without any previous notice.* Further, I understand that no Organization Manager or Representative of Montgomery Ward other than the President, Chief Executive Officer or Executive Vice President of Human Resources has authority to enter into an agreement for employment for any specified period of time or to make any agreement contrary to the foregoing." (Emphasis added.)

Despite the unequivocal language of the foregoing statement, Dell relies upon *Schipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307 (1981), for the proposition that it is, nevertheless, a fact question whether his employment contract permitted involuntary termination only for just cause. That reliance is misplaced. *Schipani* is inapposite for a number of reasons, not the least of which is that there was evidence in that case that oral promises had been made to Schipani guaranteeing his employment until age sixty-five. No such promises were made in this case. In addition, in that case the plaintiff alleged that in order to accept the management position from which he was terminated, he gave up the

security of union membership in a previous job. The Michigan court declared that because of that history, there existed a question of fact whether Schipani had a contract calling for termination for cause only. In this case, there is no such history. Finally, in *Schipani,* there was no statement in the employer's handbook describing the employment termination process, as there is in the PDRG in this case, explicitly declaring that the detailed process "does not form an employment contract."

This court, in *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986), has held that a statement signed by a Sears employee, which is essentially identical with the "sign off sheet" signed by Dell, precluded a *Toussaint* claim in that case despite evidence of the existence of a Sears employee handbook that listed specific conduct for which Sears would terminate an employee and suggesting, arguably, that an employee of that company could be terminated for just cause. The *Reid* court declared that the list of activities that could result in termination, as set out in the Sears handbook, did not vitiate the express "at will" employment contract and did not provide the plaintiffs in that case with a *reasonable* basis for the conclusion that Sears would terminate employees only for cause. *Reid* is indistinguishable from this case. The *Reid* court also rejected *Schipani* as factually distinguishable.

It is difficult to imagine what more the defendant might have done to make it crystal clear to Dell, and all Montgomery Ward employees, that, unless some other arrangement were made directly with the President and Chief Executive Officer or Executive Vice President of Human Resources, Montgomery Ward employees are employees "at will" who may be discharged with or without cause.

While the litany of cases from this court rejecting *Toussaint* claims is lengthening with the passing of every term, the manifest correctness of the trial court's decision in this case needs no embellishment with citation to further authority. The unequivocal language in the "sign off sheet" in this case, which stated that the employees could be discharged "with or without cause and without any previous notice," means what it says and is binding upon the parties. Similarly, the plain and simple statement in the PDRG, that the due process procedures established there did "not form an employment contract," likewise means what it says.

The plaintiff may have a subjective expectation that he would be terminated only for just cause. However, "plaintiff's subjective expectation does not create an enforceable contract right." *Sepanske v. Bendix Corp.,* 147 Mich.App. 819, 827, 384 N.W.2d 54 (1985); *Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 308 N.W.2d 459 (1981), *lv. denied,* 414 Mich. 870 (1982).

Affirmed.