**Robert THERRIEN, Plaintiff,**

v.

**UNITED AIR LINES, INC., a foreign corporation, Defendant.**

**Civ. A. No. 87–A–37.**

United States District Court,
D. Colorado.

Oct. 7, 1987.

Victoria C. Heldman, Schaden, Heldman & Lampert, Denver, Colo., for plaintiff.

Maureen Reidy Witt, Sandra R. Goldman, Holland & Hart, Denver, Colo., Robert P. Casey, Exold, United Air Lines, Inc., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ARRAJ, District Judge.

This matter is before the Court on defendant's motion for summary judgment. The parties have submitted briefs, affidavits, and other documentation in support of their respective positions, and oral argument was heard on October 2, 1987.

### BACKGROUND

Plaintiff Robert Therrien ("Mr. Therrien") was hired by United Air Lines, Inc. ("United") as a student flight officer in March of 1986. Subsequently, in May of 1986, Mr. Therrien's employment was abruptly terminated by United. The circumstances of Mr. Therrien's dismissal and the legal relationship created by his employment form the subject matter of the present controversy.

Prior to his acceptance of employment with United, Mr. Therrien had been employed in the airline industry as a commercial airline pilot for over eighteen years. The majority of that time had been spent working with Continental Air Lines. Mr. Therrien lost his job with Continental in

1983 as a result of the Airline Pilots Association ("ALPA") union strike against Continental and that airline's subsequent bankruptcy.

After losing his job with Continental, Mr. Therrien sought other employment within the industry as a pilot and applied on several occasions to United. In the course of this process, he filled out three employment applications. Mr. Therrien signed each of these applications immediately below the following statement:

I further understand that if I receive and accept an offer of employment with United, my employment may be terminated by United Air Lines or by me at any time, subject only to applicable requirements of law.

On his first day of employment, Mr. Therrien received and signed a one and a half page document entitled "Terms and Conditions of Employment" which contained virtually the same statement. In spite of such disclaimers to the contrary, Mr. Therrien has testified that he had the feeling he would not be terminated except for good cause.

After Mr. Therrien accepted United's offer of employment, he received and reviewed a copy of the employee handbook entitled "You and United." Page 18 of the manual states that an employee accused of misconduct serious enough to result in suspension or discharge will get the benefit of an investigation and a hearing where the employee can tell his side of the story.[1] However, the introduction to the handbook

and the referenced regulations state that they do not constitute a contract of employment and that any employee may be terminated by United without cause and in its sole discretion.[2] Mr. Therrien was aware of the policy at United, apparently based on industry practice, that the first year of employment for new pilots is "probationary."

Mr. Therrien was discharged from United in May of 1986. United claims that the discharge was due to false statements and inaccuracies in the three employment applications Mr. Therrien completed. Mr. Therrien has testified that it is his feeling that he was terminated for his union involvement prior to coming to United. The parties have stipulated that United was aware of Mr. Therrien's union activities and the extent thereof at the time he was hired.

On December 11, 1986, seven months after his discharge, Mr. Therrien filed the Complaint in this case, in which he alleged five claims for relief: (1) breach of an implied contract of employment; (2) promissory estoppel; (3) outrageous conduct; (4) violation of First Amendment rights of speech and association; and (5) violations of the Colorado Labor Peace Act (CLPA), C.R.S. §§ 8-3-101 *et seq.* The parties have stipulated to a dismissal with prejudice of Mr. Therrien's Fourth Claim. United hereby moves for summary judgment in its favor as to the other four claims.

## DISCUSSION

A motion for summary judgment shall be granted if the pleadings, affidavits, and

---

**1.** The handbook on page 18 states:
"As in any large organization, there are occasional instances of misconduct. More serious offenses may result in suspension from service or discharge. In cases of this kind, the company makes every effort to treat employees fairly. If you are ever thought to be involved in such an act, your supervisor will conduct an investigation to establish the facts in the matter. If the facts warrant consideration of disciplinary action, a formal meeting will be held as promptly as possible to determine what action by the company is appropriate.... During the meeting you may present information pertinent to your case; and you may, if you like, have another person present."

**2.** The introduction to the handbook states:
"This Handbook does not constitute a contract of employment. Since its contents may change,

where differences are noted between Company Regulations and the material presented here, the former will take precedence."
The company regulations referred to in the manual include the following statement:
"Company Regulations and policies of every nature are not intended to be, and do not constitute, a contractual arrangement or agreement between the Company and its employees of any kind, including, but not limited to, duration of the employment relationship or terms and conditions of employment. Except as otherwise provided by law, all employment is "at will" and may be terminated by the Company without cause in its sole discretion. The Company reserves the unilateral right to change, withdraw or add to Regulations and policies at any time."

other documentation submitted to the court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All pleadings, documents, and affidavits must be construed liberally in favor of the party against whom the motion is made. *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.*, 516 F.2d 33, 36 (10th Cir.1975). However, when a motion for summary judgment is supported by affidavits and other evidence, the adverse party may not rest upon the mere allegations of its pleading. Rather, its response must set forth specific facts showing there is a genuine issue for trial, and if it fails to so respond, summary judgment shall be entered against it. Fed.R.Civ.P. 56; 6 (Pt. 2) Moore's Federal Practice ¶ 56.22[2] (1987).

## I. *Implied Contract and Promissory Estoppel*

 Plaintiff's first and second claims for relief allege that United is liable in damages to Mr. Therrien for breach of an implied contract of employment and detrimental reliance (promissory estoppel). Both of these claims are based on Mr. Therrien's contention that United indicated to him that he would not be dismissed except for good cause, and that he was subsequently discharged for no good reason. Plaintiff claims that this promise formed, and is enforceable by him as, an implied contract of employment. Alternatively, plaintiff claims that he justifiably relied upon this promise to his detriment, and that it should therefore be enforced.[3]

Defendant answers that Mr. Therrien served as an "employee at will," and that therefore United had the right to dismiss him at anytime, with or without cause.[4] Additionally, defendant maintains that these claims must be dismissed because the numerous disclaimers that Mr. Therrien signed and read preclude the formation of a contract or justifiable reliance as a matter of law.

The authoritative case in Colorado on the issues of employment at will, implied contracts of employment, and promissory estoppel in an employment context is *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987). In that case, a former employee of Continental Air Lines filed a "suit alleging wrongful discharge based on the failure of Continental to follow procedures set forth in its policy manual or handbook." *Id.*, at 710. Keenan had testified that he had not relied on any policies contained in the manual at the time he became employed and did not receive a copy until after his employment had started. Additionally, there was no evidence that he had participated in the drafting of or negotiated for the provisions in the handbook. The trial court granted Continental's motion for summary judgment, and the Court of Appeals reversed and remanded the case for trial. *Id.*

At that point, the Colorado Supreme Court granted certiorari. It reinforced the general rule in Colorado that an employee hired for an indefinite period is an " 'at will employee' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Id.*, at 711. The court went on to hold, however, that this presumption of "at will" employment is not absolute, but may be rebutted by appropriate evidence.

Specifically, the court held that an employee may be able to enforce the procedures contained in an employee handbook in one of two ways. First, an employee may be entitled to relief under a theory of implied contract if he can demonstrate (1)

---

**3.** As a collateral matter, Mr. Therrien's claim for breach of an implied contract of employment includes an allegation that United breached an implied covenant of good faith and fair dealing. It is clear, however, that the Colorado Courts do not imply such a covenant in the employment at will context. *Eg., Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo.App.1986). As a result, this allegation is properly dismissed.

**4.** Of course, United claims it had good cause for firing Mr. Therrien, but the real reason for plaintiff's termination is not an issue before me. For purposes of this motion, I will accept plaintiff's contention that he was fired without good cause.

that in promulgating the termination procedures the employer was making an offer to the employee and (2) that the employee's continued employment constituted acceptance of and consideration for those procedures. Second, an employee may be able to recover under a theory of promissory estoppel if he can demonstrate (1) that the employer should reasonably have expected the employee to consider the manual as a commitment from the employer to follow the procedures, (2) that the employee justifiably relied on the handbook to his resulting detriment, and (3) that injustice can be avoided only by enforcement of the termination procedures.[5] The court concluded that although the trial court was in error in dismissing the claim, the Court of Appeals also committed error in remanding the case for trial. It was therefore ordered that the motion for dismissal was remanded with directions to the trial court to consider the standards set out above. *Id.*

United argues that the facts of Mr. Therrien's case differ in one important respect from those presented to the Colorado Supreme Court in *Keenan.* Of central importance to United's motion are the facts that the employee manual in this case expressly disclaimed that it formed a contract and that Mr. Therrien signed on three different occasions a statement to the effect that he could be terminated by United at will and without cause. United argues that these disclaimers preclude any finding of implied contract or justifiable reliance as a matter of law.

The effect of such contract disclaimers upon the doctrines of implied contract and promissory estoppel in the employment context has not as yet been considered by the Colorado Appellate Courts. However, the District Court in and for Boulder County, Colorado has ruled that claims of implied contract and promissory estoppel should be dismissed on a motion for sum-

mary judgment where it is undisputed that the employee signed a statement to the effect that the employee manual did not create a contract. *Evans v. Geriatrics,* C.A. No. 85–CV–1937, Div. 5 (July 9, 1986). In that case Judge Bellipanni reasoned that no implied contract could have been formed because the disclaimer precluded the possibility of a manifestation of assent by the employer. Similarly, the court held that the promissory estoppel claim could not proceed because the disclaimer precluded the possibility that any reliance by the employee could have been reasonable or justified. *Id.*

In another case where the employee sought to enforce the termination procedures in a personnel manual after signing a statement to the effect that he understood he was terminable at will, it was held that the complaint should not be dismissed. *Brooks v. Trans World Airlines, Inc.,* 574 F.Supp. 805 (D.Colo.1983). However, Judge Kane explicitly stated that his ruling did not mean the employee could only be dismissed for cause; it only meant that he was entitled to the procedure in the handbook. *Id.,* at 810.[6]

In the absence of a statement by the Colorado Supreme Court, it is important to note that several courts outside of Colorado have ruled that dismissal upon motion for summary judgment is appropriate where it is shown that the handbook, regulations, or other materials included a statement that the employer did not intend to create a contract of employment. *Eg., Dell v. Montgomery Ward & Co.,* 811 F.2d 970, 974 (6th Cir.1987) (court affirmed trial court's grant of summary judgment for defendant, stating that "the plain and simple statement in the [personnel manual], that the due process procedures established there did 'not form an employment contract,' ... means what it says"); *Castiglione v. The Johns-Hopkins Hosp.,* 69 Md.

---

**5.** The Colorado Court of Appeals had previously indicated that an employer could become contractually bound by policies and procedures set forth in an employee handbook. *See Wing v. JMB Property Management Corp.,* 714 P.2d 916 (Colo.App.1986); *Salimi v. Farmers Ins. Group,* 684 P.2d 264 (Colo.App.1984).

**6.** "By holding that the [employee manual] creates rights enforceable against TWA, I am not saying there is any ... right not to be discharged without cause." *Brooks,* 574 F.Supp. at 810.

**1522**

App. 325, 517 A.2d 786, 794 (1986), *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987) (court affirmed trial court's grant of summary judgment, holding that "[j]ustifiable reliance is precluded where, as in the case at hand, contractual intent has been expressly disclaimed"); *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120 (N.D. 1986). *See also Woolley v. Hoffman-LaRouche, Inc.*, 99 N.J. 284, 491 A.2d 1257 (1985) *modified*, 101 N.J. 10, 499 A.2d 515 (1985); *Batchelor v. Sears, Roebuck & Co.*, 574 F.Supp. 1480 (E.D.Mich.1983).

The present case—and this is crucial—differs from the cases cited above in that this plaintiff cannot seriously contend that he was entitled to the benefit of the grievance procedures set forth in the handbook and regulations.[7] Even if I were to rule that the policies and procedures contained in these materials became part of the terms of an implied contract between defendant and its employees, the grievance procedure would not be enforceable by this particular plaintiff because the terms of that procedure specifically exempt Mr. Therrien's class of employees. That is, the grievance procedure, by its own terms, is not available to probationary employees,[8] and plaintiff, by his own admission, knew and understood that he was a probationary employee. Thus, plaintiff in the present case can only contend that United indicated to him that he would not be terminated except for cause, and that such indications created and became a binding term of an implied contract. As a result, the employee handbook and regulations are relevant here only in so far as they support the allegation that United made manifestations that plaintiff would not be terminated without cause.[9]

This charge—a manifestation by United to plaintiff that he would not be terminated except for cause—is an essential prerequisite to both plaintiff's theories of implied contract and promissory estoppel. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d at 708. Such a manifestation is required to constitute the "offer" of the alleged unilateral contract. *Id.*, at 711. *See also* Restatement (Second) of Contracts § 17 (1981). Similarly, such indications are obviously necessary before plaintiff can claim to have relied on them to his detriment. *Keenan*, 731 P.2d at 712. Since defendant has presented evidence to the contrary on this issue, plaintiff must at least present some evidence in order to raise a disputed question of fact or summary judgment is appropriate. Fed.R.Civ.P. 56(e).

I find, however, that the employee handbook and regulations relied on by plaintiff do not constitute any evidence in support of the allegation that United promised Mr. Therrien that he would not be terminated except for cause. First, the grievance procedure upon which plaintiff relies explicitly and by his own terms did not apply to him. Second, even if it did, these materials state up front that they do not constitute a contract of employment, that the policies and procedures they contain are subject to change, and that all employment is "at will" and may be terminated by the company without cause and in its sole discretion. Thus, these materials cannot possibly be considered evidence of plaintiff's claim that United indicated to him that he was terminable only for cause.

The balance of the record presented to me likewise fails to contain any real evi-

7. It is notable that plaintiff does not make such an allegation in his complaint. Rather, he simply refers to manifestations by United that he would only be terminated for cause.

8. The three paragraphs of the handbook upon which plaintiff seems to rely specifically refer to and incorporate "the established grievance procedure" set forth in the personnel regulations. In setting forth the employee grievance procedure for non-management employees, those regulations state that "Employees who have not completed their probationary period may not utilize the grievance procedure in the event of discharge, but may utilize the grievance proce-

dure for other matters affecting their employment."

9. Additionally, I agree with the court in *Evans v. Geriatrics*, C.A. No. 85–CV–1937, Div. 5 (July 9, 1986), and the other authorities cited above, that the numerous disclaimers throughout the employment materials eliminate the possibility that the handbook and regulations could be considered a manifestation of an offer for a unilateral contract or that any reliance upon their contents could be reasonable or justifiable. Accordingly, the specific procedures within these materials would not be binding upon United even if they applied to Mr. Therrien.

dence to support this allegation. In sixteen pages of deposition testimony on the issue and repeated questioning by counsel, plaintiff was unable to point to a single specific statement, action, or manifestation of any kind by United to rebut the numerous, written, explicit statements by United that his employment was terminable at will. When asked to state the facts in support of this claim, Mr. Therrien could only say that he got a "feeling" to this effect during the orientation.[10] He also stated that this feeling was due to the fact that it is expensive for a company to train new employees. While such subjective feelings might have some significance in other areas of the law, it is elementary under the universally accepted objective theory that they are irrelevant in contract.[11] They cannot by any stretch be considered the equivalent of an objective manifestation by United.

Additionally, I cannot see how an employee's claims of implied contract and promissory estoppel could ever be allowed to stand where that employee has signed a statement acknowledging his understanding that his employment was terminable at any time without cause. It is clearly the law in Colorado that a party signing an agreement is bound to know its contents even if the party did not read it. *Clayton Brokerage Co. of St. Louis, Inc. v. Stansfield*, 582 F.Supp. 837 (D.Colo.1984). In the case at hand, Mr. Therrien signed a statement acknowledging that his employment was at will on no less than four occasions. Since the law mandates that plaintiff knew he was an employee at will, he cannot now be heard to say he understood just the opposite.

Since the employee handbook and regulations cannot be considered evidence of an indication by United to Mr. Therrien that he would only be dismissed for cause, and since the balance of the record is devoid of

any other evidence in support of this claim, I must conclude that plaintiff was an employee at will. As such, his employment could be terminated by United for no reason at all. The material facts on this issue are not in dispute, and United is entitled to judgment on these claims as a matter of law. Accordingly, defendant's motion for summary judgment in its favor on the first and second claims for relief will be granted.

## II. Outrageous Conduct

■ Plaintiff's third claim for relief alleges that defendant's conduct amounts to outrageous conduct and creates liability for the intentional infliction of emotional distress. The Colorado Supreme Court has recognized the tort of outrageous conduct causing severe emotional distress and adopted the approach set forth in the Second Restatement of Torts. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). In that case, the court held that

[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Id.*, at 756, *citing* Restatement (Second) of Torts § 46 (1965).

However, the court limited the boundaries of liability under this theory to acts which are

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* *See also* Restatement (Second) of Torts § 46 comment d.

Thus, liability is clearly limited to cases where the conduct has been truly extraordinary. Unless the acts complained of rise to

---

**10.** Even if Mr. Therrien could have pointed to specific oral statements made by United during the orientation process to the effect that he would only be dismissed for cause, such oral statements do not, by themselves, alter the presumption of employment at will. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn.1983).

**11.** "The plaintiff may have a subjective expectation that he would be terminated only for just cause. However, 'plaintiff's subjective expectation does not create an enforceable contract right.'" *Dell v. Montgomery Ward and Co.*, 811 F.2d at 974. *See also Pine River*, 333 N.W.2d at 626.

this level, no liability is imposed under this theory, *even* in cases where the actor *intended* by his conduct to inflict emotional distress. According to the Restatement,

> [i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Restatement (Second) § 46 comment d. *See also Rawson v. Sears, Roebuck & Co.,* 530 F.Supp. 776 (D.Colo.1982), *rev'd on other grounds,* 822 F.2d 908 (10th Cir. 1987).

The rule is well established that it is for the trial court to determine, in the first instance, whether the conduct could be regarded as sufficiently atrocious to permit recovery. *First Nat'l Bank in Lamar v. Collins,* 44 Colo.App. 228, 616 P.2d 154 (1980); Restatement (Second) of Torts § 46 comment h. That is, "there is a certain threshold level of conduct that must first be established for plaintiff to state a cause of action for outrageous conduct." *Simmons v. Prudential Ins. Co. of America,* 641 F.Supp. 675, 683 (D.Colo.1986). Where it is clear to the court that the conduct complained of cannot be considered as rising to the standard set forth in *Rugg v. McCarty* and § 46 of the Second Restatement, a claim for outrageous conduct is properly dismissed. *Id.*

The several cases in this jurisdiction addressing the issue have made it abundantly clear that an allegation by an employee that he was dismissed or demoted wrongfully, summarily, or in violation of the procedures set forth in an employee manual fails to state a claim for intentional infliction of emotional distress. *Eg., Salimi v.*

*Farmers Ins. Group,* 684 P.2d 264 (Colo. App.1984) (employee who alleged that he was demoted in violation of procedures set forth in an employee handbook failed to make out a claim for intentional infliction of emotional distress, and dismissal of that claim was proper); *Rawson v. Sears, Roebuck & Co.,* 530 F.Supp. 776 (D.Colo.1982) (where employee of thirty-three years claimed that his employer had willfully, wantonly, and maliciously fired him, the conduct alleged did not rise to the required threshold of outrageousness, and the claim for intentional infliction of emotional distress was dismissed); *Widdifield v. Robertshaw Controls Co.,* 671 P.2d 989 (Colo. App.1983) (where employee was dismissed for business reasons, and through no fault of his own, after having been on the job for only ten days, claim of outrageous conduct should never have been submitted to the jury); *Brezinski v. F.W. Woolworth Co.,* 626 F.Supp. 240 (D.Colo.1986) (where employee claimed he was discriminated against and discharged because of his age, allegation failed to state a claim for outrageous conduct); *Covert v. Allen Group, Inc.,* 597 F.Supp. 1268 (D.Colo.1984) (where employee alleged that he terminated his previous employment and sustained other financial and emotional injuries in reliance on defendant's promise to hire him, and the promise was not kept, claim of outrageous conduct was dismissed).[12] This appears to be the rule in other jurisdictions as well. *Eg., Novosel v. Sears, Roebuck & Co.,* 495 F.Supp. 344 (E.D.Mich.1980).

In the present case, Mr. Therrien claims that he was discharged without good cause and in violation of the procedures set forth in the employee handbook. He further alleges that his termination was based on his union involvement and that United was aware of this involvement when he was first hired.[13] Even accepting these allega-

---

**12.** It should be noted that there is at least one Colorado case where an employee's allegation of mistreatment by her employer was held to state a claim for intentional infliction of emotional distress. *Wing v. JMB Property Management Corp.,* 714 P.2d 916 (Colo.App.1985). In that case, however, the complaint "recite[d] several incidents of sexual harassment and allege[d] that as a result of defendants' actions,

she was ridiculed, threatened, humiliated, and fired. [Plaintiff] therefore allege[d] outrageous conduct based upon sexual harassment." *Id.,* at 917. No claims of sexual harassment have been asserted in the present case.

**13.** There is no evidence in the record thus far presented to the court to support the statement in plaintiff's brief that United hired Mr. Therrien "for the sole purpose of firing him." Thus,

tions as true, the authorities cited above make it clear that such actions do not rise to that level of outrageousness required to state a claim for the intentional infliction of emotional distress.

The employees in the cases cited all claimed to have been dismissed without cause and most of them alleged that the dismissal was malicious. Like Mr. Therrien, Mr. Salimi claimed that the actions taken against him were in violation of an employee handbook he had relied upon. Moreover, the charge, made by Mr. Brezinski, that he was discriminated against and fired because of his age, is not substantially different from Mr. Therrien's charge that he was discriminated against and fired because of his union activities and affiliation. Since the charges brought by these employees were all held insufficient to state a claim for outrageous conduct and were therefore dismissed, it follows that Mr. Therrien's third claim for relief must be dismissed as well.

Additionally, even if the allegations in this case amounted to outrageous conduct, plaintiff still would fail to state a claim for intentional infliction of emotional distress. According to the Restatement,

> The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. Restatement (Second) of Torts § 46 comment g.

Where an employer acts within its legal rights in terminating an employee, it is clear that the employee cannot recover for the intentional infliction of emotional distress. *Novosel v. Sears, Roebuck & Co.,* 495 F.Supp. at 347. Since I have concluded that United was acting within its legal rights when it terminated Mr. Therrien, it

follows that the third claim for relief would fail for this reason as well.

■ Finally, even if the conduct alleged in the present case could somehow be considered sufficiently outrageous and unprivileged, the claim for intentional infliction of emotional distress must still be dismissed because plaintiff has failed to make a showing of adequate emotional distress. It is clear that outrageous conduct only creates liability when the conduct is intentional or reckless, and when it "causes severe emotional distress." *Rugg v. McCarty,* 476 P.2d at 756; Restatement (Second) of Torts § 46.[14] Thus, "before a successful case for intentional infliction of emotional distress can be made out, there must be a threshold showing by the plaintiff of a certain level of emotional distress." *Novosel v. Sears, Roebuck & Co.,* 495 F.Supp. at 347. With regard to the term of "emotional distress,"

> It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises.* Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.* Restatement (Second) of Torts § 46 comment j (emphasis added).

In the present case, Mr. Therrien testified that the stress of his dismissal had manifested itself only in "down periods" and that he had not felt it necessary to seek medical or other outside help. He stated that he was a strong individual who had been able to deal with the problem on his own. He also testified that he has not stopped socializing with friends and has been able to give his new business all the

---

even if such an allegation had been made in the complaint, dismissal would be proper. Fed.R. Civ.P. 56(e).

**14.** "One who by extreme and outrageous conduct intentionally or recklessly *causes severe emotional distress* to another is subject to liabili-

ty for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46 *cited in Rugg v. McCarty,* 476 P.2d at 756 (emphasis added).

attention it required. I am convinced from his deposition as a whole that the abrupt termination of Mr. Therrien's career as a commercial airline pilot did indeed have an emotional impact on him. Yet, the embarrassment and frustration this event may have caused does not appear to this court to constitute the kind of "extreme" and "unendurable" harm described in the Restatement.

With regard to the doctrine of intentional infliction of emotional distress in general, I agree with Judge Kane's observation that

> In many, if not most, civil lawsuits, the plaintiff believes that the defendant's conduct has been outrageous. Most lawsuits also cause the plaintiff (and often the defendant) emotional stress. Yet very few fact situations give rise to a cognizable claim for intentional infliction of emotional distress. *Rawson*, 530 F.Supp. at 780.

One cannot help but to feel some sympathy for the various individuals whose unfortunate circumstances force them to seek whatever aid they can in the courts, but a trial court must apply the law as it is written, and follow it when it is clear. Accordingly, for the several reasons stated above, defendant's motion for summary judgment in its favor on plaintiff's third claim for relief will be granted.

### III. Colorado Labor Peace Act

Plaintiff's fifth claim for relief alleges that the actions taken by United in this case constitute an "unfair labor practice" as that term is defined in the Colorado Labor Peace Act (CLPA), Colo.Rev.Stat. §§ 8–3–101 *et seq.*, and that as a result United is liable for damages under Colo. Rev.Stat. § 8–3–121. By way of defense, United argues that both it and Mr. Therrien are subject to the federal Railway Labor Act (RLA), and that such employees are exempted from the provisions of the CLPA Secondly, United urges that even if this case is not exempt from coverage under the CLPA, the CLPA in this context is pre-empted by the RLA. Finally, United contends that even if the terms of the CLPA apply in this case, the complaint was

not filed within the CLPA six-month period of limitations. Since I agree with defendant's position that the claim for relief under the CLPA must be dismissed for failure to comply with the statute of limitations for such actions, I need not reach the issues presented by the other defenses.

The CLPA specifically defines what is and what is not meant by the term "unfair labor practices." Colo.Rev.Stat. §§ 8–3–108, 8–3–109 (1973). It creates an administrative structure and remedy for employees who believe they have been damaged by an unfair labor practice. *Id.*, § 8–3–110. Additionally, the CLPA gives the victim of an unfair labor practice the remedy of a private civil right of action for damages. *Id.*, § 8–3–121. The claimant may pursue either the administrative remedy or the civil action or both. *Id.*, § 8–3–110. Additionally, the CLPA explicitly provides that these remedies may be pursued simultaneously and that the failure to exhaust the administrative remedies shall not be a bar to legal or equitable relief in the courts. *Id.*

Section 8–3–110(16) of the CPLA contains the limitation period in issue and provides that

> The right of any person to proceed *under this section and section 8–3–121* shall not extend beyond six months from the date of the specific act or unfair labor practice alleged (emphasis added).

It is undisputed that the complaint in this case was filed more than six months after Mr. Therrien was discharged by United. The question before the court is the proper construction of the language emphasized above. Defendant contends that this provision applies to both administrative actions and civil cases, and that therefore the present litigation is subject to this six-month limitation. In contrast, plaintiff alleges that the proper construction is that the limitation only applies to actions that are brought under *both* § 8–3–110 and § 8–3–121. That is, plaintiff argues that only those employees who proceed *both* administratively and by way of civil action at the same time are subject to this restriction. For the reasons that follow, I cannot

accept plaintiff's tortured construction of the above quoted language.

First, it has already been held that a civil action brought under § 8–3–121 that was never pursued administratively under § 8–3–110 is subject to the six-month statute of limitations set forth in § 8–3–110(16). *Brezinski v. F.W. Woolworth Co.*, 626 F.Supp. at 240. In that case, Judge Kane held that violations of Colo.Rev.Stat. § 8–2–116, which section makes it a criminal offense to engage in age discrimination, also gives the employee a private civil right of action for damages and that such actions are brought under § 8–3–121. The Court then went on to hold that the action before it had to be dismissed because it was subject to § 8–3–110(16) and it was filed more than six months after the alleged incident of discrimination took place. According to the Court:

> Section 8–3–110(16) clearly limits the time period for the filing of actions for damages under § 8–3–121 to six months. *Id.,* at 243.

There is nothing in the *Brezinski* opinion to even suggest that the plaintiff may have also proceeded administratively. *Id.* Moreover, even if he had, he would not have been proceeding under § 8–3–110 because that section only provides a remedy for discrimination based on union affiliation, not discrimination based on age. Thus, it is clearly established that a civil action brought under § 8–3–121 is subject to the provisions of § 8–3–110(16) whether or not the plaintiff chose to pursue the administrative remedy.[15]

Additionally, it is well established in Colorado that courts are duty-bound to construe an ambiguous statute so as to avoid an absurd result. *Eg. J.S. Dillon & Sons Stores Co. v. Carrington*, 169 Colo. 242, 455 P.2d 201 (1969). To accept plaintiff's construction would be to ignore the reality

that it is uncommon at best for a party to decide to file both an administrative and a civil complaint at the same time. Moreover, the result of plaintiff's construction that § 8–3–110(16) applies only to actions brought under both § 8–3–110 and § 8–3–121 would be that there would be no statute of limitations within the CLPA for actions brought solely under § 8–3–110 or actions brought solely under § 8–3–121. Taken to its logical extreme, plaintiff's interpretation means that one who files only an administrative claim may do so at any time, and that one who files only a civil claim for damages may do so at any time, but that one who chooses to pursue both courses of action must file both complaints within six months of the alleged unfair labor act. Since plaintiff's strained and technical construction would produce results that are absurd on their face, such construction must be rejected.

As already noted, there is no dispute that Mr. Therrien's complaint was filed more than six months after his dismissal. Accordingly, since I conclude for the several reasons stated above that the six-month period of limitations set forth in Colo.Rev. Stat. § 8–3–110(16) applies to civil actions brought under § 8–3–121, defendant's motion for summary judgment in its favor on plaintiff's fifth claim for relief will be granted.

## CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment in its favor on the first, second, third, and fifth claims for relief be, and the same hereby is, GRANTED.

The Clerk is hereby ordered to enter judgment in favor of the defendant and

---

**15.** In support of its position, plaintiff did point to one case at oral argument where the court had allowed a claim allegedly arising under Colo.Rev.Stat. § 8–3–121 to proceed even though it was apparently filed some twenty-eight months after the alleged incident took place. *Rawson v. Sears, Roebuck & Co.*, 530 F.Supp. at 776. However, there is no indication that the statute of limitations issue was ever

raised before the court in *Rawson*. Although we cannot speculate now as to what the court's conclusion on that point might have been, it must be noted that the very same court held only last year (four years after its initial decision in *Rawson* ) that the statute of limitations for actions brought solely under Colo.Rev.Stat. § 8–3–121 is six months. *Brezinski v. F.W. Woolworth Co.*, 626 F.Supp. at 240.

against the plaintiff. The complaint and action are dismissed with prejudice, and no costs are assessed.

### JUDGMENT

PURSUANT TO and in accordance with the Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment entered by the Honorable Alfred A. Arraj, District Judge, on October 7, 1987, it is

ORDERED that judgment is entered in favor of the defendant, United Air Lines, Inc., and against the plaintiff, Robert Therrien, on the first, second, third and fifth claims for relief. It is

FURTHER ORDERED that the complaint and action are dismissed with prejudice, and that no costs are assessed.

DATED at Denver, Colorado, this 7th day of October, 1987.