893 F.2d 1335
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert E. PETERS, Plaintiff-Appellant,
v.
USA TODAY, A DIVISION OF GANNETT SATELLITE INFORMATION
NETWORK, INC., Defendant-Appellee.
 No. 89-1306.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1990.
 
 BEFORE BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert Peters, plaintiff-appellant, appeals the district court's decision granting summary judgment against him in this wrongful discharge action. For the following reasons, we affirm.
 
 I.
 
 2
 Peters' sole count in his first amended complaint was that the defendant, USA Today, violated an implied employment contract by terminating him without just cause. USA Today maintained that Peters was employed on an "at will" basis, having no contractual guarantee of discharge only for just cause.
 
 
 3
 Peters was hired by USA Today as an Accounting Manager on February 13, 1984. His title was subsequently changed from Accounting Manager to Controller. Aside from this change, which was implemented by USA Today nationwide, Peters' job and responsibilities remained the same throughout his employment. On May 11, 1988, Peters was terminated for discussing confidential information about a sensitive employee relations problem. Peters suspected that Bob Purdue, a black employee in his office, had made " 'an EEO type complaint' regarding 'job discrimination' ". On May 9, 1988, Peters overheard a conversation between the General Manager of USA Today's Detroit office, Robert Hamlin, and Bob Purdue concerning Purdue's EEO claim. The portion of the conversation which Peter's overheard dealt with a meeting the next day between Purdue and high level company officials. Peters later commented on the matter to Purdue, asking if tomorrow was "the day of reckoning."
 
 
 4
 Upon learning of Peter's remarks to Purdue, and Purdue's reactions to these remarks, company officials informed Peters that Purdue had been upset by his remarks and that he had violated the company policy of confidentiality. After further discussion, Peters was given the option of resigning or being terminated for violating the policy on confidentiality as set forth in the 1988 Employee Handbook. Peters admitted that he had reviewed the policy in the handbook, that he knew that as a manager he had responsibility not to disclose confidential information, and that he knew Purdue's claim was both confidential and an extremely sensitive issue. Having opted not to resign, Peters was terminated on May 11, 1988.
 
 
 5
 On July 27, 1988, Robert Peters filed this wrongful discharge action in the United States District Court for the Eastern District of Michigan, Judge Barbara Hackett presiding. Before the district court, Peters claimed that, based on the 1988 Handbook, a September 18, 1985, memorandum regarding discipline and discharge, and a training session that occurred in conjunction with that memorandum, he was entitled to progressive discipline prior to being terminated.
 
 
 6
 USA today filed a motion for summary judgment in the district court based upon the clear language of the 1988 Employee Handbook. The USA Today Employee Handbook explicitly states in several locations that USA Today reserves the right to terminate an employee for any reason, with or without notice. This reservation first appears on the back of the Handbook's title page:
 
 
 7
 You have the right to quit USA Today at anytime, for any reason, and USA Today reserves the same right regarding termination of your employment compensation and benefits, with or without notice.
 
 
 8
 Page 22 of the Handbook describes a variety of activities that could result in "disciplinary action, including dismissal". The Handbook goes on to state that "these are illustrations. Other acts could, in the discretion of USA Today, lead to discipline or dismissal". Finally, on page 61 of the Handbook in the section titled "Separation/Resignation", the Handbook states:
 
 
 9
 Both you and USA Today have an equal right to end you employment, compensation and benefits at any time, for any reason ...
 
 Dismissal
 
 10
 If your conduct or performance warrants, you may be dismissed from your employment with USA Today, with or without notice.
 
 
 11
 On February 17, 1988, the district court granted USA Today's motion for summary judgment, holding that Peters was an employee at will, that the language of the Handbook was controlling, and that no implied contract existed which required that Peters be dismissed only for cause. Peters then filed a timely notice of appeal. On April 6, 1989, his appeal was dismissed for lack of prosecution. On April 12, 1989 this court reinstated the appeal. On July 27, 1989, Peters filed a motion to allow oral argument to be heard en banc. On October 3, 1989, USA Today filed a motion to respond in opposition to en banc review which was granted on October 5, 1989. The motion to hear en banc was subsequently denied by this court. This timely appeal followed.
 
 II.
 
 12
 When an appellate court reviews a grant of summary judgment, the district court decision is reviewed de novo. Pinney Dock and Transport Co. v. Penn. Cent. Corp., 838 F.2d 1445, 1473 (6th Cir.1988) (citations omitted). It is axiomatic that in reviewing an order entering summary judgment, the appellate court must determine whether, viewing the facts in a light most favorable to the opposing party, the moving party is entitled to summary judgment. A party is entitled to summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.
 
 
 13
 On appeal, Peters argues that questions of material fact remain as to the existence of a just cause employment contract and whether USA Today had just cause to terminate Peters' employment. The issue of whether USA Today had just cause for termination was not presented to the district court in the motion for summary judgment filed by USA Today and therefore was not reached when the district court determined that Peters' was an employee at will. Peters is correct in asserting that the issue of whether just cause existed is a question of fact for the jury absent an explicit provision that plaintiff can be terminated without just cause. It is therefore not properly before us. Penn Cent. Corp., 838 F.2d at 1461.
 
 
 14
 Peters' just cause implied contract claim is based on Touissant v. Blue Cross, 408 Mich. 579, 292 N.W. 880 (1980). In Touissant, the Michigan Supreme Court created an exception to the general rule that contracts for permanent employment are "indefinite hirings, terminable at the will of either party." Id. at 596. The Touissant court held that written promises not to terminate employees except for just cause "were enforceable in contract." Id. at 610. In support of his claim, Peters construes language from the 1988 Employment Handbook which refers to options regarding progressive discipline plans available to supervisors. For example, the section entitled "Discharge" contained the following language:
 
 
 15
 Should your performance be unsatisfactory termination may occur. In most cases, a performance improvement program will be undertaken with you by your supervisor in an attempt to avoid termination. However, illegal or unethical activities or other major violations of Company policies can bring about suspension pending investigation or immediate termination.
 
 
 16
 Peters also cites to language in the Performance Improvement Plan which provided, "If your performance does not meet the standards your position requires, your supervisor may undertake a Performance Improvement Plan with you" (emphasis added). Peters contends that this language entitles him to progressive discipline before termination. While this language describes what may occur in most cases, it clearly does not guarantee a progressive disciplinary process, nor does it negate the various explicit at will provisions contained in the handbook.
 
 
 17
 In granting USA Today's motion for summary judgment, the district court stated that "Courts have repeatedly rejected breach of employment contract claims which are brought in the face of handbook or employment application language which disclaims any right to just cause discharge." The court relied on Dell v. Montgomery Ward & Co., 811 F.2d 970 (6th Cir.1987), in which the plaintiff argued that Montgomery Ward's extensive discipline and discharge procedures contained in the Human Resources Policy Manual created a contractual right to a just cause discharge under Touissant. This court disagreed and relied on language in the procedures guide and policy manual which stated that terminations can occur with or without cause and with or without notice. Id. at 972, 974. Specifically, we noted that:
 
 
 18
 While the litany of cases from this court reflecting Touissant claims is lengthening with the passing of every term, the manifest correctness of the trial court's decision in this case needs no embellishment with citation to further authority. The unequivocal language in the 'sign off sheet' in this case, which stated that the employees could be discharged 'with or without cause and with or without any previous notice' means what it says and is binding upon the parties. Similarly the plain and simple statement in the PDRG, that the due process procedures established there did not form an employment contract, likewise means what it says.
 
 
 19
 Id. at 974.
 
 
 20
 The district court also discussed Sitek v. Forest City Enterprises, 587 F.Supp. 1381 (E.D.Mich.1984), where the plaintiff's claim that "his relationship with the Company was cemented and that the company did not in anyway want to lose him", was rejected in the face of language in the employee handbook which stated that the employment relationship between employer and employee is at will and may be terminated by either party at any time. Id. at 1384. Finally, the district court cited to Reid v. Sears, Roebuck and Co., 790 F.2d 453, 456 (6th Cir.1986) wherein this court dismissed plaintiffs' breach of contract claim because they had signed employment applications which set forth Sears' right to terminate "employment and compensation ... with or without cause and with or without notice, at any time...." Id.
 
 
 21
 Turning to the instant case, we agree that USA instituted an explicit at will provision on the back of the title page of the Handbook which reads:
 
 
 22
 Both you and USA Today have an equal right to end your employment, compensation and benefits at any time, for any reason ...
 
 Dismissal
 
 23
 If your conduct or performance warrants, you may be dismissed from your employment with USA Today, with or without notice.
 
 
 24
 Thus, we find that the district court correctly concluded that Peters was an at will employee based on this explicit disclaimer in the Handbook of any other relationship.
 
 
 25
 The district court also determined that Peters was not entitled to progressive discipline before being terminated. The court took a dim view of Peters' claim that a September 1985, internal memorandum regarding discipline and discharge required him to utilize progressive discipline with the employees he supervised and that therefore his supervisors were required to use progressive discipline with him. The court found that language in the Handbook which set out the discipline schedule also explicitly reserves the right to depart from progressive discipline at any time and to terminate employees without warning, and within the sole discretion of USA Today. This provision, found on page 22 of the Handbook, reads as follows:
 
 
 26
 Disciplinary action is intended to deter unprofessional behavior and to provide opportunity for improvement. There are generally four steps to progressive discipline at USA Today:
 
 
 27
 --Oral warning,
 
 
 28
 --Written warning,
 
 
 29
 --Suspension with or without pay,
 
 
 30
 --Dismissal.
 
 
 31
 However, USA Today is under no obligation to follow these steps in sequence or even to follow them at all. We reserve the right to fire immediately, without warning. We deal with conduct and behavior problems case by case. Your previous work history and the seriousness of the offense will be considered in determining what action is to be taken.
 
 
 32
 The district court noted that in Dell, 811 F.2d 970, Montgomery Ward had a requirement that supervisors follow established disciplinary procedures in disciplining and discharging employees. Yet, because the procedures guide and policy manual stated that the due process disciplinary procedures should not be interpreted as constituting an employment contract, this court dismissed the plaintiffs' breach of employment contract claim. The district court pointed out that USA Today inserted a similar provision in the 1988 Employee Handbook:
 
 
 33
 Programs and policies outlined here are not intended to create a contract with you. Instead, they are to inform you. They are statements of general policy only and are not blueprints of how policies are to be carried out. We continue to study ways to enhance employment at USA Today and thus we might improve, modify or end programs and policies described in this handbook as conditions warrant.
 
 
 34
 To the extent that Peters' argument that the September 1985 memorandum and training session established a requirement that supervisors use progressive discipline, the district court determined that it is clear that policy was superseded by the 1988 Handbook's explicit provision that the company can depart from progressive discipline at any time and can terminate employees without reason or notice. Moreover, even the 1983 Handbook which Peters received when he joined USA Today contained similar language. Because USA Today in no way required that specific procedures of progressive discipline be followed across the board, we find this argument lacks merit, and that the district court's conclusions are correct.
 
 
 35
 Finally, Peters argues that USA Today's Handbook provided him with a mixed at will and just cause message regarding the nature of his contract. Therefore, Peters further claims that pursuant to Dalton v. Herbruck Egg Sales Corp., 164 Mich.App. 543, 417 N.W.2d 496 (1987) a jury should have been permitted to resolve the ambiguity.
 
 
 36
 The district court properly rejected Peters argument based on Dalton for two reasons. First, this court recently declined to follow Dalton stating:
 
 
 37
 "we believe Dalton is inconsistent with the teachings of Touissant and its progeny, and thus subscribe to the better reasoned analysis of Judge Lively in Reid v. Sears, Roebuck & Co., 790 F.2d 453 (6th Cir.1986).
 
 
 38
 Pratt v. Brown Mach. Co., 855 F.2d 1225, 1234 n. 11 (6th Cir.1987). Second, Dalton is distinguishable on its facts. In Dalton, the employer had a progressive discipline policy which guaranteed a specific level of discipline for each instance of misconduct. Because of the mandatory policy, the Dalton court held that plaintiff had a contract guaranteeing required levels of discipline for misconduct and that the jury had to resolve any conflict between that disciplinary contract and the company's waiver of just cause discharge rights.
 
 
 39
 Unlike the employer in Dalton, USA Today does not guarantee progressive discipline or specific levels of discipline for varying types of misconduct. In fact, the 1988 Handbook states that "USA Today is under no obligation to follow these steps in sequence or even to follow them at all. We reserve the right to fire immediately without warning." Because USA Today's at will disclaimers and reservation of rights are clear and explicit, the district court correctly granted summary judgment on behalf of USA Today.
 
 III.
 
 40
 Accordingly, for the reasons stated above, the judgment of the district court is AFFIRMED.